### DETERMINED IN

# THE SUPREME COURT,

53 321
87 584
53 321
88 202

# JANUARY TERM, 1879.

[No. 4150.]

## JOHN HEINLEN *v.* CALVIN MARTIN AND WAYNE B. ROGERS.

SPECIFIC PERFORMANCE—SUFFICIENCY OF COMPLAINT.—In the absence of a special demurrer on the ground of ambiguity, if it appear from the general framework of the complaint that the action is for specific performance, it will be so considered, though the complaint be obnoxious to criticism for want of perspicuity.

POWER OF ATTORNEY TO SELL LAND IN 1867.—Under the statutes of this State, in force in the year 1867, a power of attorney for the sale and conveyance of land, which was not under seal, did not authorize the attorney to convey the legal title, but was sufficient to enable him to enter into a valid contract of sale.

EQUITY—DEED TREATED AS CONTRACT OF SALE.—In such a case, if the attorney enter into a contract of sale, and in the name of his principal execute to the purchaser a deed absolute in form, though inoperative to pass the legal title, it will be treated in a Court of Equity as a valid contract of sale, entitling the purchaser to a conveyance of the legal title; and if the purchaser by a conveyance absolute in form convey his interest in the premises to a third person, the conveyance will be deemed in a Court of Equity an assignment of the contract of sale.

DELIVERY OF POWER OF ATTORNEY EXECUTED IN MEXICO.—If a power of attorney for the sale and conveyance of land in this State, executed in the Republic of Mexico, be written by the Notary in his official book kept for that purpose according to the usage prevailing in that country, and if the instrument so written in the official book be duly signed, acknowledged, and certified as required by the laws of this State, and if the Notary thereupon

deliver to the attorney a certified copy of the original, these facts will constitute sufficient evidence of delivery.

MARRIED WOMAN IN 1867—POWER OF ATTORNEY TO SELL LAND.—Under the laws of this State, in force in the year 1867, a married woman could not execute a valid power of attorney to sell or convey her separate real estate, situate in this State, unless her husband united in the execution of it.

CONSTRUCTION OF FINDINGS.—*Held*, that from the findings in this case it sufficiently appears that the plaintiff paid to Aguayo the five thousand dollars stipulated to be paid as the consideration for the conveyance from the latter to the former, as averred in the complaint, and that the plaintiff succeeded to the rights acquired by Aguayo under the conveyance of January 2nd, 1867.

DECREE FOR RENTAL VALUE OF LAND.—On the facts found, the Court below would have been justified in decreeing to the plaintiff the rental value of the land from the commencement of the action.

DEMAND FOR CONVEYANCE.—The commencement of this action was a sufficient demand for a conveyance, and from that time the plaintiff is entitled to rents and profits.

APPEAL from the District Court of the Third Judicial District, Santa Clara County.

On and prior to August 4th, 1864, the six children of Gervacio Arguello and wife were the owners of an undivided eleventh (1-11) of the Rancho Santa Teresa, situated in the County of Santa Clara, California. On that day they went before Ramon Barbosa, a National Notary Public at Guadalajara, Mexico, and executed in the protocol in his custody a power of attorney to Jesus Camarena. At the same time this instrument was executed in the protocol, the Notary, Barbosa, drew off and certified a copy, (known in the Spanish law as *copia original*, or *testimonio*) and delivered the same to Jesus Camarena, the attorney in fact therein named. On the 8th day of January, 1866, Jesus Camarena, pursuant to a power contained in said letter of attorney, executed a substitution of attorney in favor of A. D. Splivalo, conferring on him all the powers possessed by him, said Camarena. The *testimonio* of the original power, and the original substitution, were produced in Court, stitched together, forming one set of papers. Also, photographic copies of both. On the 10th day of May, 1866, Splivalo, acting as the attorney of the Arguellos, and in their names, made an agreement with Heinlen, wherein, for the consideration of four thousand five hundred dollars, the latter was to receive the title

of the Arguellos to the interest in question—two thousand two hundred and fifty dollars of which was paid in hand, and on December, 1866, two thousand seven hundred and fifty dollars more was tendered.   On the 2nd day of January, 1867, Splivalo sold said interest to Antonio Aguayo for five thousand dollars, and delivered a deed of conveyance therefor in the names of said Arguellos, on the same date, and at the same time received the consideration.   This deed was recorded in the proper county on the 3rd day of January, 1867.   On the 15th day of March, 1867, Heinlen compromised with Aguayo, and took his deed for the premises, paying therefor the sum of five thousand dollars, which deed was recorded in the proper county on the 30th day of May, 1867.   Late in the year 1866, Domingo, one of the six Arguello heirs, came to California, and in the presence of Heinlen examined the *testimonio* of the original power and the substitution, and declared and asserted that they were valid and sufficient to enable Splivalo to make a good and sufficient conveyance of their interest.   On the afternoon of the 3rd day of January, 1867, Domingo Arguello executed and delivered to the defendant Martin a deed of conveyance of his sixth part in said premises, which deed was recorded in the proper county on the 4th day of January, 1867.   Martin and Rogers personally and by their agents had at that time full knowledge of the existence of said power of attorney and substitution.   On July 4th, 1867, the other five Arguellos executed deeds of conveyance of their respective interests to Martin and Rogers.

This action was commenced May 10th, 1870.   The complaint, omitting the title, and the power of attorney which was appended as an exhibit, was as follows:

"The plaintiff, John Heinlen, complains of the defendants in the foregoing entitled action, and for cause of action avers:

"That heretofore, to wit, on the 25th day of August, 1866, José Maria Arguello, Josefa Arguello, Concepcion Arguello, Jesus Cervantes Arguello, Josefa Ballardi Arguello, and Domingo Arguello were the owners of the legal title and estate of one undivided eleventh of the Rancho Santa Teresa, situate and being in the County of Santa Clara and State of Califor-

nia, and being the same interest and estate derived from one Joaquin Bernal, deceased, to Incarnacion Bernal Arguello, who was the mother of said Arguellos, and likewise deceased. And that they continued to be said owners until their said title and estate was divested as hereinafter set forth.

" That afterwards, and on said 25th day of August, 1866, an action was commenced in the District Court of the Third Judicial District of the State of California, in and for the County of Santa Clara, wherein one Wm. A. Senter and others were plaintiffs, and one Blanda Castro de Bernal and others, including said Arguellos and this plaintiff and said defendants Martin and Rogers, were defendants, wherein and whereby said Rancho Santa Teresa was sought to be partitioned, divided, and set apart in severalty to the various owners and cotenants thereof, according to the respective interests therein.

"That afterwards, certain proceedings were had and done in said action, to the end that, and on the 30th day of November, 1867, an interlocutory decree was made and entered by said Court, adjudging among other things that the said José Maria Arguello, Josefa Arguello, Concepcion Arguello, Jesus Cervantes Arguello, Josefa Ballardi Arguello de Camarena and Domingo Arguello were jointly the owners of an undivided 877-9647 part of said Rancho of Santa Teresa, subject, however, to any right or claim thereto, or to any part thereof, of said John Heinlen or Calvin Martin, whose respective rights and claims to the same, if any, were thereby specially reserved to them.

" That afterwards, to wit, on the 27th day of May, 1868, a final decree was made and entered in said action by said Court, wherein, among other things, there was set apart to said Arguello last above named, in severalty, and as and for the said undivided interest as aforesaid, that portion of said Rancho Santa Teresa bounded and described as follows, to wit: Beginning at a point in the channel of the Coyote River upon the boundary between the Rancho Santa Teresa and Yerba Buena, as surveyed by John Wallace, United States Deputy Surveyor, at the most eastern corner of lot number forty-six, from which a post marked A 7, on the south bank of said river, bears south

thirty-six degrees west six chains; thence leaving said boundary south thirty-seven degrees west one hundred and forty-four and fifty one-hundredths chains to a post marked O. 4, standing on the boundary of the Rancho Santa Teresa at the southeast corner of lot number fifty-two; thence east seventeen and twenty-two one-hundredths chains to a post marked H. K. at northeast corner of lot number fifty-six; thence south twenty chains to a post marked H. K. at the southeast corner of lot number fifty-six; thence east along the said boundary of the Rancho Santa Teresa eighty-four and eighty-eight one-hundredths chains; thence north fifty-seven and three-quarters degrees and nineteen chains to a post standing in the Puerto Suelo de la Laguna, marked S. T. No. 8, upon the boundary line between the Rancho Santa Teresa and the Rancho Laguna Seca; and running thence along said boundary north thirty-one degrees east fifty-nine chains to a post at the corner of the Rancho Yerba Buena, being also a corner of the Alviez field, which is a part of the Rancho Laguna Seca; thence north seventy-eight and one-half degrees west sixty-six and ten one-hundredths chains; thence north twenty-six and one-half degrees east twenty-two chains; thence south sixty-eight and one-half degrees east twenty and seventy one-hundredths chains; thence south fifty-six degrees east forty-four chains; thence down the channel of the Coyote River along the boundary of the Yerba Buena Rancho, as surveyed by John Wallace, United States Deputy Surveyor, to the place of beginning, containing one thousand and forty-eight and ninety-six one-hundredths acres, being lot number fifty-five upon the map attached to the report of the commissioners appointed to make the partition aforesaid.

"Further complaining, this plaintiff avers:

"That heretofore, to wit, on the 4th day of August, 1864, said Domingo Arguello, Josefa Arguello, José Maria Arguello, Concepcion Arguello, Jesus Cervantes Arguello, Josefa Ballardi Arguello de Camarena, and Ramon Camarena, signed, made, and delivered to one Jesus Camarena, a written instrument, and power and letter of attorney, in the Spanish language, and fully sufficient for that purpose, by which, among other things, they, the said Domingo, Josefa, José Maria, Con-

cepcion, Jesus Cervantes, Josefa Ballardi, and Ramon Cama-
rena, and each of them, authorized and empowered the said
Jesus Camarena for them and in their names, place, and stead,
and in the name, place, and stead of each of them, to sell and
convey unto such person or persons as to him might seem meet,
all of the said undivided interest of them, and each of them, in
and to the said Rancho Santa Teresa; and that by the said let-
ter and power of attorney the said constituents empowered and
fully authorized the said attorney to substitute as their attorney,
and as the attorney of each of them, in stead and place of him
the said Jesus Camarena, to sell and convey, and to make con-
tracts for the sale of the said undivided interest in the said lands
and premises, in the names, place, and stead of them the said
constituents and each of them, as fully as they themselves could
do (a copy of which said letter of attorney, with the transla-
tion thereof into the English language, is hereto annexed and
marked 'Exhibit A,' and made a part of this complaint).

"And this plaintiff avers :

"That said power and letter of attorney has ever since the
time of the making thereof as aforesaid remained unrevoked.
That afterwards, to wit, on the 8th day of January, A. D. 1866,
the said Jesus Camarena, by an instrument in writing good and
sufficient for that purpose, substituted in his place and stead one
Augustus D. Splivalo as the attorney of the said Domingo, José
Maria, Josefa, Concepcion, Jesus Cervantes Arguello, Josefa
Arguello de Camarena, and Ramon Camarena, with like powers,
as their said attorney, and as fully as he, the said Jesus Cama-
rena, himself possessed.  And that under and by virtue of the
said letter of attorney, and of the authority thereby conferred,
the said Splivalo, in the names, place, and stead of his said
constituents and each of them, afterwards, on the 2nd day of
January, A. D. 1867, by an instrument of writing of that date,
duly sealed and signed, and in all things sufficient for that pur-
pose, contracted to convey, and sold and conveyed, to one An-
tonio Aguayo all their, the said Arguellos', interest, and each of
their right, title, and interest in and to and unto the said Rancho
Santa Teresa ; and that said Aguayo then and there, and at the
time of the delivery to him of said instrument in writing by

said Splivalo, delivered and paid to him, said Splivalo, as the attorney of said Arguellos, the sum of five thousand dollars in the gold coin of the United States, as the price and consideration of said sale of said undivided eleventh interest and part of said Rancho Santa Teresa. That afterwards, to wit, on the 15th day of March, A. D. 1867, the said Aguayo, by good and sufficient deed of conveyance of that date, sold, conveyed, and assigned to the plaintiff herein all of said undivided eleventh part of said Rancho Santa Teresa, and all of his rights therein so conveyed to and acquired by him, said Aguayo, from and through said Arguellos, acting by their said attorney Splivalo, for which said interest and as the consideration therefor the plaintiff Heinlen then and there paid to said Aguayo the sum of five thousand dollars in the gold coin of the United States.

"The plaintiff Heinlen further avers:

"That since the acquisition of the interests and rights hereinbefore set forth, the said Calvin Martin, on or about the 3rd day of January, A. D. 1867, fraudulently procured the said Domingo Arguello to make, execute, and deliver to him, the said Calvin Martin, what purported on its face to be a deed of conveyance from said Domingo Arguello to said Calvin Martin, bearing date the 2nd day of January, A. D. 1867, conveying the right, title, and interest of said Domingo in and to said Rancho Santa Teresa, to wit, the undivided sixth part of the undivided eleventh of said Rancho to the said Calvin Martin. That at the time of and before the making and delivery to him, the said Martin, of the said deed, he, the said Martin, had full and actual notice and knowledge of all the rights of the plaintiff Heinlen, under the said contract and conveyance and proceedings hereinbefore set forth and mentioned, and under the several instruments hereinbefore referred to, and that the said Martin took whatever title which vested in him by virtue of said instrument, made as aforesaid by said Domingo to him, subject to all the rights of this plaintiff in and to the said lands and premises.

"This plaintiff further avers:

"That since the acquisition by him of the said rights and equitable interests hereinbefore set forth, and after the placing

of record of said instruments and deeds from said Aguayo to this plaintiff, and from said Arguellos, by their said attorney in fact Splivalo to said Aguayo, (which said instruments and deeds, the plaintiff avers, were recorded in the Recorder's office in and for the County of Santa Clara) to wit, on or about the 4th day of July, A. D. 1867, the said Calvin Martin and the said Wayne B. Rogers fraudulently procured said José Maria Arguello, Josefa Arguello, Concepcion Arguello, Jesus Cervantes Arguello, Josefa Ballardi Arguello de Camarena and Ramon Camarena, to make, execute, and deliver to them, said Martin and Rogers, what purported on its face to be a deed of conveyance from said José Maria, Josefa, Concepcion, Jesus Cervantes, Josefa Ballardi, and Ramon, to said Martin and Rogers, bearing date the 4th day of July, A. D. 1867, conveying to said Martin and Rogers the right, title, and interests of said named grantors in and to said Rancho Santa Teresa, to wit, five sixth parts undivided of said undivided eleventh of said Rancho.

"That at the time of and before the making and delivering to them, the said Martin and Rogers, they and each of them had full and actual notice and knowledge of all the rights of this plaintiff under said contract, conveyances, and proceedings set forth herein, and under the several instruments hereinbefore mentioned and referred to, and that said Martin and Rogers, and each of them, took whatever title that vested in them by virtue of the said instrument made to them by the said José Maria, Josefa, Concepcion, Jesus Cervantes, Josefa Ballardi, and Ramon, as aforesaid, subject to all the rights of this plaintiff in and to said lands and premises.

"That afterwards, to wit, on the      day of July, A. D. 1868, the said defendants Martin and Rogers, fraudulently representing themselves to be the agents of the before mentioned Arguellos, and that they had become the successors in interest to them, and to all their rights and estate in and to the said Rancho Santa Teresa, and as such were the owners thereof, fraudulently procured the Sheriff of the County of Santa Clara, and under the decree aforesaid of this Honorable Court, to place them in the possession of the said lands and premises assigned in severalty to the said Arguellos, by the said decree, and which said premises are

hereinbefore described by metes and bounds; and that they have, ever since their entry as aforesaid, so remained in the possession thereof by themselves and their tenants, excluding the plaintiff therefrom and from every part thereof, and still continue so to do.

"That the rental value of said premises so described by metes and bounds is the sum of three thousand dollars per annum, and such has been during all the time said premises have been held by them as aforesaid, by said Martin and Rogers.

"Wherefore this plaintiff, John Heinlen, prays that he be adjudged to be and to have been the equitable owner of and entitled to the possession of said undivided eleventh part of said Rancho Santa Teresa, and of the segregated parcel thereof so set apart as aforesaid, and hereinbefore described by metes and bounds.

"That the said Calvin Martin and the said Wayne B. Rogers be decreed to be the trustees of this plaintiff of said premises, and that whatever title they or either of them may have acquired be adjudged to be and to have been in trust for this plaintiff, and that they be decreed to convey the same to him, and that in default in making such conveyance, a commissioner be appointed by this Court to make the same for them and on their behalf, and a writ of possession be decreed to issue in favor of this plaintiff, placing him in the sole and exclusive possession of said premises.

"That they, said defendants, be required to account to this plaintiff for the value of the rents and profits of said premises during the time the same have been held by them, and that this plaintiff have judgment against them, said defendants, for the sum of ten thousand dollars, the value of said rents and profits, and that he have judgment for his costs, and that he have such other and further relief as to equity shall seem meet.

                              "Wm. Matthews,
                              "Frs. E. Spencer,
                                        "Attorneys for Plaintiff."

The findings were as follows:

"This cause came on regularly to be tried before the Court sitting without a jury—a jury having been expressly waived by

the respective parties—and from the admissions of the respective parties duly entered, depositions and testimony produced, the Court finds the following facts:

" 1. That upon the 4th day of August, 1864, Domingo Arguello, José Maria Arguello, Josefa Ballardi Arguello de Camarena, Jesus Cervantes Arguello, Josefa Arguello, and Concepcion Arguello were the owners of one undivided eleventh of the Rancho Santa Teresa, in the County of Santa Clara and State of California. That the interest thus held by them was before the commencement of this action set apart to said parties above named in severalty, by a final decree of the District Court of the Third Judicial District, in a proceeding regularly instituted and prosecuted in said District Court in and for the County of Santa Clara, for a partition of the said Rancho Santa Teresa among the several owners thereof, and that said partition was had among the several parties in said partition suit, subject to the rights of the parties to this present action.

" 2. That afterwards and upon the same day, to wit, the 4th day of August, A. D. 1864, said several parties hereinbefore named, desiring to sell and dispose of the interest set apart to them in said partition suit, made, executed, and delivered at the City of Guadalajara, in the Republic of Mexico, to one Jesus Camarena, their certain letter and power of attorney in writing, by which power of attorney they, the said Arguellos, authorized and empowered said Camarena as their attorney to, upon their behalf, and in their name and stead, sell and dispose of all their interests in the said Santa Teresa Rancho, empowering and authorizing said attorney to act in said matter and in their behalf as fully as they would do if present, and giving to said attorney all the power and authority to act for them that could be given or created by any instrument or act not regularly under seal. In said power of attorney said Camarena was further authorized and empowered to substitute in his name, place, and stead, any other person to act under said power of attorney, as the agent and attorney in fact of said principals, the Arguellos. Such substituted attorney to have all the power that was originally given to Camarena, and to act for said principals in all respects as fully as the said Camarena or as said principals could do. '

"3. No act affecting said land was personally performed by said Camarena under said power, but upon the 8th of January, 1866, and while said Camarena was still such attorney and acting under said power, the same being in no way revoked or restricted from its original terms and effect, said Camarena, by a full and regular instrument in writing, by him duly signed and regularly executed, substituted in his stead one Augustus D. Splivalo, as the attorney in fact of the said Arguéllos. Such substitution was made by Camarena under the authority of substitution given in said original power. Splivalo accepted said appointment and acted upon the same, and the Arguellos were informed by Camarena of the substitution thus made, and acquiesced in the same.

"4. After such substitution, and upon the 10th of May, 1866, Splivalo, as attorney in fact of said Arguellos, and acting upon said substitution, in the names and upon the behalf of his principals, the Arguellos, made and entered into a written agreement with this plaintiff, John Heinlen, by which agreement said Arguellos agreed with Heinlen to sell and convey to Heinlen, by good and suffcient deeds of conveyance, the interests of the said Arguellos in the Santa Teresa Rancho for the sum of four thousand five hundred dollars in gold coin, two thousand two hundred and fifty dollars of which sum was paid at the time of the execution of said agreement, and the like sum to be paid when certain incumbrances upon those interests should be removed, and a clear title thereof made by said Arguellos to Heinlen. This agreement was signed with the names of the said Arguellos by their attorney Splivalo, and also by John Heinlen upon his own behalf.

"5. After the execution of this contract, and in accordance with the provisions of the same, Heinlen entered into the possession of a portion of said Rancho Santa Teresa, claiming title to the undivided one-eleventh of the same, as the Arguellos' interest, secured to him by said agreement with Splivalo of the 10th of May, 1866, and retained said possession until about the 27th of November, 1868, at which time said defendants, claiming the interest of said Arguellos as set apart to them in said partition suit, entered upon and took possession of the in-

terest set apart to said Arguellos in said rancho, and have ever since retained the same, and excluded the plaintiff therefrom.

" 6. That at and before the said 27th of November, 1868, said plaintiff John Heinlen was in possession of a small tract of said Santa Teresa Rancho, amounting to about eighteen acres. This land was purchased from one Chapman, and was not part of the interest held or set apart to the Arguellos. Upon this tract of eighteen acres Heinlen had substantial inclosures, buildings, and improvements, and himself resided there.

" 7. That upon the 2nd day of January, A. D. 1867, Heinlen tendered to Splivalo, then attorney in fact of the Arguellos, and then so acting, the remainder of the sum stipulated to be paid to said Arguellos in the contract of May 10th, 1866, which sum, thus and then tendered, said Splivalo, as such attorney, then refused to accept or receive.

" 8. That thereafter, and upon the 2nd day of January, 1867, said Splivalo, as the acting attorney in fact of said Arguellos, and acting in their names and upon their behalf, and without the consent and against the wish of Heinlen, made, executed, acknowledged, and delivered to one Antonio Aguayo a written conveyance under seal of the one-eleventh of the said Santa Teresa Rancho, being the interest held and claimed by the Arguellos, in consideration of which conveyance the said Aguayo then paid to said Splivalo the consideration in said deed expressed—five thousand dollars in gold coin.

" 9. That afterward, and upon the 15th day of March, 1867, the said Aguayo, being informed of the claim of Heinlen, and of the contract and agreement between Splivalo and Heinlen, upon the day last named, made, executed, acknowledged, and delivered to said John Heinlen his deed of conveyance of all the interest by him acquired through deed of Splivalo of the 2nd of January, 1867, being the one-eleventh of the Santa Teresa Rancho, and in consideration thereof the said John Heinlen then paid to said A. D. Splivalo, as attorney in fact of the Arguellos, the further sum of twenty-seven hundred and fifty dollars gold coin, and the said Splivalo received and accepted the same, and then and there repaid to the said Aguayo the sum of five thousand dollars, before that time paid by said Aguayo to Splivalo

for the deed of January 2nd, 1867 : said Splivalo retaining said sums of money, to wit, five thousand dollars, for and upon account of his principals, the said Arguellos, and still so retaining said five thousand dollars.

"10. That upon the 3rd day of January, 1867, and after the execution of the deed from Splivalo to Aguayo, the defendant Calvin Martin procured and received a deed of conveyance from Domingo Arguello of all his interest in the said eleventh of the Santa Teresa Rancho, paying to Domingo Arguello at the time, and as the consideration therefor, the sum of about one thousand three hundred and thirty-three dollars, and depositing, subject to the final consummation of the transaction, the sum of two hundred and fifty dollars with one T. L. Meyer. The defendants also at the time made arrangements with Domingo Arguello for securing the deeds and conveyances of the several Arguellos heretofore named, and made arrangements to secure the balance of the purchase-price of said interests, making in all eight thousand dollars, when a deed should be secured from Mexico, executed by said Arguellos.

" Thereafter, in the month of July, 1867, deeds were executed by said Arguellos conveying to Martin two-sixths of said eleventh, and to Rogers three-sixths of said eleventh, and thereupon the remainder of said consideration-money was paid by Martin and Rogers, making in all the sum of eight thousand dollars by them paid in consideration of said several conveyances.

"11. That at the time of the execution of the conveyance by Domingo Arguello to Martin, upon the 3rd day of January, 1867, and before the payment of any portion of the consideration therefor by Martin, and from that time thereafter, Martin and Rogers, and each of them, knew of the power of attorney from said Arguellos to Camarena, and of the substitution made of A. D. Splivalo in and under said power, and of the contract entered into upon the 2nd of January, 1867, between Splivalo, acting as attorney for said Arguellos, and Heinlen, for the purchase, by Heinlen, of the interest of the said Arguellos in the Santa Teresa Rancho ; and said Martin and Rogers, during all said time, knew of the deed and conveyance from Splivalo

to Aguayo, and of the respective considerations paid by Heinlen for the contract of May 10th, 1866, and by Aguayo for the conveyance of January 2nd, 1867, and of the rights of Heinlen thereunder.

"12. That upon the 27th of November, 1868, the defendants took possession of that portion of the Santa Teresa Rancho that was set off and segregated to said Arguellos in said partition suit, and have ever since retained possession of the same, and excluded the plaintiff from the same and every part thereof.

"13. That of the tract of land thus set apart to the Arguellos, and referred to and made the subject of the contracts and agreements above set forth, six hundred and eighty-six acres is valley or level land, and one hundred and eighty-eight acres is hill land; that the rental value of the valley or low land is three dollars and fifty cents per acre per annum, and of the hill land one dollar per acre per year, and the rental value of the whole of said tract has been twenty-five hundred and eighty-nine dollars per annum from said 27th of November, 1868, to the present time.

"14. And as conclusions of law from the foregoing facts I find that the defendants Calvin Martin and Wayne B. Rogers hold the interest in the Santa Teresa Rancho by them acquired from Domingo Arguello, José Maria Arguello, Josefa Ballardi Arguello de Camarena, Concepcion Arguello, and Jesus Cervantes Arguello, and Josefa Arguello, by deed of the 3rd of January, 1867, and of the month of July, 1867, as trustees and in trust for the said John Heinlen, and the said John Heinlen is in equity entitled to the conveyance of the legal title to the same.

"And it is ordered that said Calvin Martin and Wayne B. Rogers do, within ten days from the date of this order, execute, acknowledge, and deliver to said John Heinlen a good and sufficient deed of conveyance of said interest. And that in the event of their failing so to do, that W. C. Kennedy, Court Commissioner of this Court, do in their names and under this order make and deliver such conveyance. Counsel for plaintiff will prepare and submit a decree for carrying into effect the foregoing order.

"It is further ordered and adjudged that plaintiff do have and recover from defendants Calvin Martin and Wayne B. Rogers the sum of three thousand six hundred and seventy-nine dollars for the value of the use and occupation of said premises and tract of land from the 27th of November, 1868, to the 16th of May, 1870, the date of the commencement of this action, and the further sum of six thousand three hundred and twenty-one dollars ($6,321) for use and occupation from May 10th, 1870, to the present time. And that plaintiff do also recover his costs of suit, to be taxed by the Clerk.

"In open Court this 6th day of January, 1873.

"D. BELDEN,

"District Judge."

The contract of May 10th, 1866, signed by John Heinlen, and by Aug. D. Splivalo as attorney in fact for the seven Arguellos, was as follows:

"Memorandum of agreement made and entered into at the City of San José, County of Santa Clara, State of California, on this tenth day of the month of May, A. D. 1866, between Domingo Arguello, José Maria Arguello, Josefa Arguello, Concepcion Arguello, Jesus Cervantes Arguello, José Ramon Camarena, and Josefa Ballardi Arguello de Camarena, of the City of Guadalajara, Mexico, by their attorney in fact, Augustus D. Splivalo, of the City and County of San Francisco, State of California, parties of the first part, and John Heinlen, of the City of San José, County of Santa Clara, State aforesaid, party of the second part, witnesseth: whereas, the said parties of the first part, as the heirs of Gervacio Arguello and Encarnacion Bernal de Arguello, are lawfully entitled to and the owners of one undivided eleventh part of the Rancho Santa Teresa, in the County of Santa Clara, State of California; and whereas, the said one undivided eleventh part of said Rancho is clouded and encumbered by certain tax titles thereto; now, therefore, it is hereby agreed and understood by and between the said parties hereto as follows:

"1. The said party of the second part shall at once institute all

the necessary proceedings, legal or otherwise, to clear the said one undivided eleventh of all clouds and incumbrances, and prosecute them until a last and final termination, the said party of the second part paying any and all expenses to the purpose.

" 2. The said party of the second part agrees to pay unto the said parties of the first part the sum of four thousand five hundred (4,500) dollars, in United States gold coin, for the said undivided eleventh of said Rancho, payable as follows: two thousand two hundred and fifty dollars in United States gold coin at once, and the further sum of two thousand two hundred and fifty dollars, in United States gold coin, as soon as the said one undivided eleventh interest in said Rãncho shall be clear of all clouds and incumbrances.

" 3. Whether the proceedings to be instituted as above for the purpose of clearing the said interest of all clouds and incumbrances prove favorable or fatal, in any and all cases the expenses attending such proceedings shall be defrayed by the said party of the second part, at his own risk, and without recourse of any kind against said parties of the first part.

" 4. The said parties of the first part agree to sell and convey unto the said party of the second part all their right, title, and interest in and to the said Rancho of Santa Teresa, said interest being the one undivided eleventh, for the sum of four thousand five hundred dollars, payable as above expressed; and they agree further that as soon as the said proceedings to be instituted as above by the said party of the second part, for the purpose of clearing their said interest from all clouds and incumbrances, shall terminate, and the said interest be clear, they shall, on the receipt of the further sum of two thousand two hundred and fifty dollars in United States gold coin, as above expressed, give unto the said party of the second part their good and sufficient title to the same; but in case the said proceedings should unavoidably, and not through the carelessness or neglect of the said party of the second part, prove fatal, then and in that event they, the said parties of the first part, shall, within ten days after the final termination of said proceeding, reimburse unto the said party of the second part the sum of two thousand two hundred and fifty dollars in

United States gold coin, by him now to be paid, without interest; and the said parties hereto shall then remain free from any and further obligation to each other.

"In witness whereof, the said parties hereto have hereunto set their hands and seals, the day and year first above written."

The contract was acknowledged before a Notary, and appended was a receipt for the two thousand two hundred and fifty dollars paid, with an agreement to return the money in case of failure of proceedings to quiet title.

Judgment was rendered for the plaintiff, and the defendants appealed.

The other facts are stated in the opinion.

*Houghton & Reynolds*, for Appellants.

*Francis E. Spencer, J. A. Moultrie*, and *Wm. Matthews*, for Respondent.

By the COURT:

The defendants contend that on the face of the complaint this is not an action for specific performance, but an action at law on an alleged legal title for the recovery of the land. We are of opinion, however, that though the complaint is obnoxious to criticism, it sufficiently appears on the face of it that the action is for the specific performance of a contract for the conveyance of land. There was no special demurrer on the ground of ambiguity.

Both parties claim under the six heirs of Arguello, who are conceded to have been the owners in fee, and the title of the plaintiff, as stated in the complaint, is deraigned through, 1st, a power of attorney not under seal, from the six Arguellos to Camarena, with a power of substitution; 2nd, a substitution by Camarena of Splivalo, under the power; 3rd, a deed, absolute in form, from the six Arguellos by Splivalo as attorney in fact, to Aguayo, for the consideration of five thousand dollars; 4th, a subsequent deed from Aguayo to the plaintiff for the consideration of five thousand dollars, which the complaint avers

was paid by the plaintiff to Aguayo at the time of the execution of the deed. It is contended by the defendants that the power of attorney is invalid for want of a sufficient delivery; and it appeared in evidence that the instrument was executed in the Republic of Mexico, before a Notary Public, in the usual manner prevailing in that country; that the power was written by the Notary in his official book kept for that purpose, was duly signed and acknowledged by the parties and duly certified by the Notary, in the form required by our statute; and as the original was written and signed in the official book, and for that reason could not, in a literal sense, be delivered to the attorney, a copy duly certified by the Notary was delivered to the attorney named in the power. We are of opinion that in contemplation of law these facts constituted a sufficient delivery.

But it appeared on the face of the power of attorney that one of the persons who signed it was a married woman, and the husband did not unite in the execution of the power. As our statute then stood, a married woman could not make a valid power of attorney to convey her separate real estate, unless her husband united in the execution of it, and as to this woman, the power of attorney was inoperative, and conferred no authority to dispose of her interest in the land.

The power of attorney to Splivalo was not under seal, and, under the then existing statutes of this State, was insufficient to enable the attorney to convey the legal title, but, on well-settled principles, was operative to enable him to enter into a valid contract of sale. By reason of this defect in the power of attorney, the deed to Aguayo did not pass the legal title, but in a Court of Equity will be deemed a contract of sale, entitling the vendee to a conveyance of the legal title. The deed from Aguayo to the plaintiff operated in law as an assignment of the equitable title held by the former, under the deed of January 2nd, 1867.

The complaint avers, as already stated, that when the plaintiff took the conveyance from Aguayo, he paid him, as the consideration therefor, the sum of five thousand dollars. The Court does not, in terms, find this fact. But it finds that Splivalo then

had in his hands two thousand two hundred and fifty dollars, before that time paid to him by the plaintiff under the contract of May 10th, 1866; and that when the plaintiff received the deed from Aguayo, he paid to Splivalo the further sum of two thousand seven hundred and fifty dollars, and thereupon, then and there, Splivalo paid to Aguayo the sum of five thousand dollars. It was all one transaction, and in legal effect it was a payment by the plaintiff to Aguayo, through Splivalo, who then had in his hands two thousand two hundred and fifty dollars of the plaintiff's money, and to whom the plaintiff then paid the further sum of two thousand seven hundred and fifty dollars, making in the aggregate the sum of five thousand dollars, the whole amount agreed to be paid. In his testimony, Splivalo thus explains the transaction: "Instead of my returning the two thousand two hundred and fifty dollars to John Heinlen, and he making the payment to Aguayo, I paid Aguayo directly, and Heinlen paid me the balance of two thousand seven hundred and fifty dollars; it was all done at one and the same moment at my office." In the light of this testimony, (which is uncontradicted) there can be no doubt that, in legal effect, it was a payment of five thousand dollars by the plaintiff to Aguayo.

It has been suggested that the legal effect of this transaction was simply a rescission of the contract between Splivalo and Aguayo, and a performance of the contract of May 10th, 1866, between the plaintiff and Splivalo; and consequently that the plaintiff must stand on that contract alone, and acquired no new equity under the conveyance from Aguayo. On the contrary, it is clear, from the findings and proofs, that as between the plaintiff and Splivalo, the transaction with Aguayo was practically an abandonment of the contract of May 10th, 1866; and as a substitute therefor the plaintiff accepted the conveyance from Aguayo, and paid him the full consideration, to wit, five thousand dollars. That the contract of May 10th, 1866, was abandoned is evident from the fact that Splivalo, with the plaintiffs' consent, paid to Aguayo the two thousand two hundred and fifty dollars before then paid under the contract of May 10th, 1866. If, after the transaction with Aguayo, the plaintiff

had brought an action for the specific performance of the contract of May 10th, 1866, he must have failed on the ground that the contract was abandoned when he accepted the conveyance from Aguayo, and authorized Splivalo to pay to him the two thousand two hundred and fifty dollars before then paid under the contract. The contract was merged in the transaction with Aguayo, and thenceforth ceased to be obligatory on either of the parties to it. But the defendants contend that the finding to the effect that two thousand seven hundred and fifty dollars was paid by the plaintiffs to Splivalo on the 15th of March, 1867, was not justified by the evidence. We are, however, of opinion that there was evidence tending to support the finding, and that it ought not to be disturbed on this ground.

The defendants further insist that under the pleadings the contract of May 10th, 1866, was not admissible in evidence for any purpose. But, if for no other purpose, it was certainly admissible to prove the payment by the plaintiff of the two thousand two hundred and fifty dollars, and the circumstances under which it was made, and as explanatory of the transaction with Aguayo. It is for these purposes only that we have considered it.

The Court finds that the rights the defendants acquired from the Arguellos, if any, were acquired with full notice of the conveyance to Aguayo, and of the consideration paid by him, and before payment by them of any part of the purchase money. It results from these views, that from the findings, and without reference to the contract of May 10th, 1866, as a basis for equitable relief, the plaintiff is the equitable owner of five undivided sixths of the land in controversy, and is entitled to a conveyance by the defendants of the legal title thereto.

This brings us to the question whether the Court below erred in awarding to the plaintiff the rental value of the land during the time the defendants have occupied it. The argument for the defendants is, first, that even though the plaintiff be conceded to be the equitable owner, by virtue of his contract of purchase, he did not thereby become entitled to the possession, in the absence of an agreement to let him into the possession; and that, not being entitled to the possession, he cannot recover rents and

profits.   Second, that the plaintiff made no demand for a conveyance prior to the commencement of the action.

In discussing this question, it will be borne in mind that, from the 15th of March, 1867, until the present time, the plaintiff has been, and yet is, the equitable owner of five undivided sixths of the land, the legal title to which has been, and yet is, held by the defendants, who are entitled to the remaining one undivided sixth.   As to the five undivided sixths, the defendants have held the dry legal title as trustees for the plaintiff, and as the Court finds, have held the possession of the whole from November, 1868, excluding the plaintiff therefrom.   They entered claiming the exclusive right to the possession, and in their answer deny the plaintiff's title to any portion of the land, and assert an exclusive right in themselves from the time of the conveyance by the Arguellos to them, in the year 1867.   They have forced the plaintiff to appeal to a Court of Equity to compel a conveyance of the legal title, and during the long interim which has elapsed have enjoyed the use of the land.   When the plaintiff shall have acquired the legal title, he cannot maintain an action at law for mesne profits.

At common law the plaintiff in ejectment could not recover the mesne profits in the same action, but was compelled to establish his title or right to the possession by the judgment in ejectment, and might then prosecute his action of trespass for mesne profits, on the trial of which the judgment in ejectment would be conclusive evidence of his prior right to the possession under a legal title, and of the ouster by the defendants.   But the theory of the action for mesne profits was that the plaintiff had all the time held the legal title, and had been ousted by the defendant; and the rental value of the land while the plaintiff was deprived of the possession was awarded in the form of damages.   But under our statute the mesne profits may be recovered in the action of ejectment, which, however, can only be maintained on the legal title.   If the plaintiff holds only the equitable title, and is forced to go into a Court of Equity to compel a conveyance of the legal title, it is well settled that he cannot afterwards maintain an action at law for the mesne profits, for the reasons already indicated; and if he

cannot recover rents and profits in the action in equity he is
without remedy.   But, fortunately, a Court of Equity will not
permit so great a wrong, and will afford complete relief in such
a case.   " If there is a trust estate, and the *cestui que trust*
comes into equity upon his title to recover the estate, he will be
decreed to have the further relief of an account of the rents
and profits."   (1 Story, Eq. Jur. 512 ; 3 Atk. R. 124.)

We think this is the correct rule, and we find no authority to
the contrary.   It is in consonance with the general principle that
a Court of Equity will do complete justice in a cause of which it
has jurisdiction, and more particularly if there be no other
·remedy, to prevent a failure of justice.   But the rule as stated
by Story is, that the plaintiff is entitled to an *account* of the
rents and profits ; and the defendants contend that the rule ap-
plies only where the premises have been let at rent by the
defendant, and where he has actually received rents as such,
and has no application where the defendant, as in this case, has
himself occupied the premises, and has received no rents.   On
this theory the plaintiff is absolutely without remedy, and that,
too, for no better reason than that the defendant, instead of
renting the land to tenants, has himself occupied it and enjoyed
its fruits.   But Courts of Equity do not administer relief in
such cases, on an inflexible rule of this character.   On the
contrary, the relief varies according to the exigency of the
particular case, so as to prevent a failure of justice.   *Worrall
v. Munn*, 38 N. Y. 137, was an action for the specific perform-
ance of a contract to convey a parcel of land, valuable only
for beds of clay suitable for making bricks, and utterly value-
less for any other purpose.   After the executory contract of
·sale was entered into, the vendor sold and conveyed the prem-
ises to the defendant Munn, who took the title with notice of the
plaintiff's equity, and who occupied the premises for the manu-
facture of bricks.   One of the questions was, to what com-
pensation the plaintiff was entitled for having been kept out of
the possession for a series of years ; and in discussing this point
the Court said : " The general rule on this subject, as laid down
by the elementary writers, and in the adjudged cases, is, that
the Court of Equity will, so far as possible, place the parties

in the same situation as they would have been if the contract had been performed according to its terms ; and, to that end, the vendor will be regarded as trustee for the benefit of the purchaser, and liable to account to him for the rents and profits ; and the purchaser will be treated as trustee of the purchase-money, if not paid, and will be charged with interest thereon. *And when the vendor is himself in the actual occupation of the premises, he is charged with the value of the use and occupation."* (*Robertson* v. *Skelton*, 12 Beav. 360 ; *Dyer* v. *Hargrave*, 10 Ves. 506.)

" But while this is the general rule, it is not inflexible ; a Court of Equity moulds its own relief, and gives redress according to the circumstances of each case."

In that case the land had no rental value, and yet the plaintiff had been deprived of the opportunity to use it for the only purpose for which it was valuable, and for which he had purchased it, and it was contended that he should be awarded as damages such profits as he could have made by the manufacture of bricks.  But the Court held such damages to be speculative and too remote, and to prevent a failure of justice they awarded as damages interest on the purchase money during the time the possession was withheld.  This case is cited not only in support of the proposition that the vendor in the actual occupation is chargeable with the value of the use and occupation, if the premises have a rental value, but also as demonstrating the flexibility with which Courts of Equity in this class of cases adapt the remedy to the exigency of the particular case so as to prevent a failure of justice.  In *Cole* v. *Tyson*, 8 Ired. Eq. 170, the vendee, under an executory contract of sale, was let into the possession, and after a portion of the purchase money was paid, died, leaving minor children as his heirs at law. Thereupon the vendor took possession of the land, denying the title of the heirs, and claiming to be the absolute owner.  The heirs brought an action for specific performance ; and one of the questions was, whether the vendor was chargeable with the rental value of the land during his occupation.  Ruffin, C. J., in delivering the opinion of the Court, said: " His [the vendor's] entry was in avoidance of his sale, and so was wrongful in the

view of the Court of Equity, in which he, as vendor, is regarded as a trustee for the vendee, except only in respect of the estate being a security for the price." Again he says: "Instead of the fair and legal course of filing a bill, [to enforce a vendor's lien] the vendor, upon the mere force of his legal title, and taking advantage of the incapacity and helplessness of the vendee's children, injuriously denied any rights in them, and claimed a perfect title in himself, as well in equity as at law, and as such entered, and in all respects acted as owner, by pulling down and selling houses, and building others, and finally by conveying the fee. One thus abusing the power given by the legal title, and denying the rights of infants for whom he was trustee, cannot be looked on in a Court of Equity in any light but that of a *tort feasor*, by reason of a willful and gross breach of trust, and, therefore, he is justly chargeable with the highest occupier's rent from the moment of the breach of trust."

In the case at bar, the plaintiff, it is true, is not a minor; but he was entitled to a conveyance of the legal title in March, 1867, and in November, 1868, the defendants, with notice of his equity, entered into the exclusive possession, denying his rights either in equity or at law, and claiming to be the absolute owners. For more than ten years they have persistently denied his rights, have excluded him from the possession, and during the whole period have themselves enjoyed the fruits of the land, while holding only the dry legal title as trustees of the plaintiff. One thus abusing the power given him by the legal title must, in a Court of Equity, as against the *cestui que trust*, be deemed a wrong-doer, and should be held to account for the rental value of the land. In a similar case, the Court of Appeals of Kentucky, in *Baxter* v. *Brand*, 6 Dana, 296, charged the vendor with the "reasonable profits" of the land during the time he occupied it; and as we understand the term "reasonable profits" in the sense in which it was used, it is the equivalent of the rental value of the land.

If the defendants are to account for rents and profits, or for the value of the use and occupation, the amount can be ascertained only in one of two methods—either, first, by charging them with the rental value of the land, as was done by the Court

below; or, second, by taking an account in which they would be debited with all sums realized, or which, with reasonable diligence, might have been realized from the cultivation and use of the land, and crediting them with all necessary or proper disbursements. If it should appear, on stating the account, that the disbursements equaled or exceeded the receipts, the plaintiff would get nothing, although for ten years or more he had been deprived of the opportunity to let the land at rent, or to devote it to such other use as his interest or convenience dictated. In other words, he would have been forced, against his consent, during all these years, to accept the defendants as his agents to conduct the business of farming his own land at his expense and risk.

Whatever may be the rule where a trustee has not himself occupied and enjoyed the trust estate, but has received rents from it, justice and equity demand that where he has wrongfully excluded the true owner, and has himself occupied and enjoyed the fruits of the estate, he shall at least account for its rental value. It is a favorite maxim with a Court of Equity, that it will consider as done that which ought to be done, and in such a forum the defendants will be deemed to occupy the same position as though they had conveyed to the plaintiff the legal title when it was their duty to convey it, and had then refused to surrender the possession, and had continued to occupy and enjoy the fruits of the land. If they had done this, no one will doubt that the plaintiff could have recovered the rental value of the land in an action at law.

In the view of a Court of Equity, the plaintiff is to be deemed the owner from the time he became entitled to a conveyance of the legal title; and in analogy to the relief granted at law, he may recover the rental value of the land.

But it is further contended that the defendants were in no default until after demand was made for a conveyance, and that neither the findings nor evidence show a demand prior to the commencement of the action. It is therefore insisted that the judgment is erroneous, in so far as it charges the defendants with rents and profits prior to the commencement of the action.

This point is well taken, unless it affirmatively appears from

the pleadings and findings that a demand would have been refused, and would therefore have been unavailing. The commencement of the action was undoubtedly a sufficient demand; and from that time the plaintiff was entitled to rents and profits; but we cannot say that it affirmatively appears from the pleadings and findings that a prior demand would have been refused.

Judgment and order reversed and cause remanded, with an order to the Court below to modify its judgment in accordance with this opinion. Remittitur forthwith.

RHODES, J., dissenting:

I would readily concur in several of the propositions discussed in the foregoing opinion, if, in my judgment, they were presented by the record; but as I view the case, the contract which is specifically enforced is not pleaded, and its introduction in evidence was objected to by the defendants. I therefore dissent from the opinion and judgment.

WALLACE, C. J., being disqualified, did not participate in the decision.