[S. F. No. 1433.   Department Two.—April 4, 1900.]

## ANNABELLE HARRON, Respondent, v. HOWARD HARRON, Appellant.

MARRIAGE—CONTRACT—FINDING—INSUFFICIENT EVIDENCE—DIVORCE.— Prior to the amendment of 1895 to section 55 of the Civil Code, a mere contract to marry, without any solemnization of marriage, must have been followed by a mutual assumption of marital rights, duties, or obligations, in order to constitute a marriage; and where there was proof of such a contract, but no proof of any assumption of marital rights, duties, or obligations, or of any general and undivided repute of marriage, or

of any declaration of the fact of marriage, except by the alleged
wife in a single instance, a finding of the fact of marriage is
not sustained by the evidence; and a judgment of divorce based
upon such finding must be reversed.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco.  George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, John S. Drum, and Sidney M. Ehrman,
for Appellant.

Dunne & McPike, and Henry C. McPike, for Respondent.

THE COURT.—This is an appeal by defendant from the
judgment entered against him in an action for divorce, the evi-
dence being brought up for review by a bill of exceptions.

Plaintiff's name had been Anna Belle O'Callaghan.  She was
a member of the chorus at the Tivoli Opera House, under the
stage name of Belle Emmett.  Defendant, at the time he met
her, was engaged in farming a ranch belonging to his mother,
in Napa county, and at the same time was studying law.  He
visited San Francisco frequently, and was introduced to plain-
tiff.  He entered into and maintained relations with her which
were admittedly illicit.  Upon January 22, 1893, plaintiff gave
birth to a child.  Thereafter she went to Napa to see defendant,
and to induce him to marry her on account of the baby.  In
October, 1893, the two signed the following:

"Annie Callaghan, of the city and county of San Francisco,
and Howard Harron, city and county aforesaid, hereby enter
into a contract to marry."  Thereafter the relations of the two
continued much as before they had been.  Plaintiff rented and
paid for a room under the name of Belle Emmett, where de-
fendant occasionally visited her and spent the night.  Upon
other occasions she accompanied him and passed the night with
him in various lodging-houses in San Francisco.  They never
had a home together; he never supported her, though at times
he gave her trifling sums of money and presents of small value.
Defendant was a young man, and his farming operations were
unsuccessful, and he does not appear to have been financially
able to support plaintiff; but, on the other hand, it affirma-

tively appears, and is uncontradicted, that he never declared her to be his wife, never presented her as his wife, and when he and she were in company with others she was always known as Miss Emmett, or Belle Emmett. Delia O'Callaghan, mother of the plaintiff, was informed, so the daughter testifies, of her marriage with Harron. But the mother died in 1897, leaving a will executed in that year, in which throughout she speaks of her as Annie O'Callaghan, and as Annie O'Callaghan, swearing in court that such was her name, the plaintiff obtained letters testamentary upon her mother's estate. The child that had been born of plaintiff living, she named it Grace Harron. Defendant visited plaintiff at the house of Mabel Gluyas, who testified that plaintiff introduced defendant to her, saying, "This is Mr. Harron, the father of my child, and my husband." Upon that occasion, defendant, carrying the child, took the plaintiff to dinner at a neighboring restaurant. Once he gave the child a small gold baby pin of trifling value.

The foregoing summarization of the evidence omits, we think, no important fact. It has been read with scrupulous care to find in it support for the conclusion which the court reached that the parties to this action were husband and wife. There was admittedly no solemnization of marriage, and, failing that, the marriage status must have been created by the consent of the two, followed by the mutual assumption of marital rights, duties, or obligations. (Civ. Code, sec. 55, before amendment in 1895.) Tested by the rule of *Sharon v. Sharon*, 79 Cal. 663, by *White v. White*, 82 Cal. 427, *Kilburn v. Kilburn*, 89 Cal. 46, 23 Am. St. Rep. 447, *People v. Lehman*, 104 Cal. 631, *Hinckley v. Ayres*, 105 Cal. 317, and *Hite v. Hite*, 124 Cal. 389, 71 Am. St. Rep. 82, we find no assumption of marital rights, duties, or obligations—no general and undivided repute of marriage; no declaration of a marriage at all except that by the wife in the single instance above mentioned.

The judgment appealed from is therefore reversed.