[L. A. No. 1265.   Department Two.—September 1, 1904.]

## CATHERINE M. BELL, Appellant, v. SOUTHERN PACIFIC RAILROAD COMPANY, Respondent.

REVIEW UPON APPEAL—ORDER DENYING NEW TRIAL—SUFFICIENCY OF CROSS-COMPLAINT—FINDINGS—ISSUES.—Where an appeal from the judgment has been dismissed, and the only appeal left is from an order denying a new trial, the sufficiency of a cross-complaint to state a cause of action, the sufficiency of the findings to support the judgment, and whether certain findings are outside of the issues, cannot be reviewed or considered.

ID.—ALLEGED ERROR IN PERMITTING CROSS-COMPLAINT—BILL OF EXCEPTIONS.—An alleged error in permitting the cross-complaint to be filed cannot be reviewed upon appeal from such order, where there is no bill of exceptions in the record reserving and presenting that point.

ID.—POINTS NOT DISCUSSED IN BRIEF—PRESUMPTION UPON APPEAL.— Assignments of errors of law committed in rulings made during the progress of the trial which are not discussed in appellant's brief will not be examined or considered upon the appeal; but it must be presumed that no error exists in such rulings.

ID.—SUFFICIENCY OF EVIDENCE—EJECTMENT — CROSS-COMPLAINT UPON CONTRACT FOR RIGHT OF WAY—SUPPORT OF FINDINGS.—In an action of ejectment against a railroad company, where the court found against the plaintiff, and in favor of the defendant, who sought by cross-complaint to enforce a written contract against the plaintiff for a right of way, held, upon a review of the evidence, that the court was justified in finding that there was no material misrepresentation by the railroad company, that it employed reasonable speed in constructing its road and completed it within a reasonable time, and that the agreement was as to the plaintiff just and reasonable, and that her land had been benefited by the construction of the road.

ID.—ATTACK UPON WRITTEN CONTRACT—CONTEMPORANEOUS ORAL REPRESENTATION—COGENCY OF EVIDENCE—PROVINCE OF TRIAL COURT.— The written contract for the right of way, which is complete and definite in its terms, cannot be successfully attacked and defeated under a claim that a contemporaneous oral representation subsequently unfulfilled, operated as a material inducement and consideration for its execution, unless such claim is supported by clear, cogent, and convincing evidence, and whether the evidence is of such a persuasive character, is for the determination of the trial court.

ID.—EVIDENCE OF DILIGENCE IN CONSTRUCTION OF ROAD—CIRCUMSTANCES —FINANCIAL DEPRESSION.—Whether the construction of a railroad

has been prosecuted with reasonable dispatch is to be determined by the trial court largely from the character and magnitude of the enterprise involved, the difficulties and obstacles to be overcome, and the circumstances surrounding and attending the work; and the court had the right to consider the general financial depression then prevailing, which affected and retarded all enterprises, in determining whether reasonable progress had been made.

ID.—EVIDENCE OF BENEFIT TO PLAINTIFF — PROSPECTIVE BENEFITS.— Where the evidence shows that the markets for the products of plaintiff's lands have been improved and enlarged by the construction of the road, though the evidence is conflicting as to immediate benefits, but there is ample evidence to show that the prospective benefits are large, the finding that her lands were benefited by the construction of the road is sufficiently supported. Prospective advantages are none the less benefits, and the probability of their attainment always enters largely as an inducing cause in a contract for a railroad right of way.

ID.—ENFORCEMENT OF UNILATERAL CONTRACT—MUTUALITY—EXECUTED CONSIDERATION.—A contract or mere offer of a right of way, unilateral at first, resting upon prospective benefits or enhancement of value from the construction of the railroad, as the inducement on the part of the promisor, may be enforced by the railroad company when mutuality is secured by an executed consideration on the part of the railroad company by the construction and operation of its road.

APPEAL from an order of the Superior Court of Santa Barbara County denying a new trial. W. S. Day, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, for Appellant.

Canfield & Starbuck, for Respondent.

LORIGAN, J.—As originally brought, this action was in ejectment to recover a tract of land in Santa Barbara County over which the railroad of the defendant is constructed and operated, and for damages for the alleged trespass committed in entering thereon, and for the value of the rents, issues, and profits.

Defendant answered denying the material allegations of the complaint, and set up, in justification of its entry, possession, and use, a written agreement on the part of the plaintiff to convey to it, as a right of way for its railroad, a part of the premises described in the complaint, and of which

alone it alleged it was in possession. At the same time, by cross-complaint (subsequently amended), defendant sought to have this agreement to convey specifically enforced, and upon the issues made by an answer of plaintiff thereto, denying, among other things, the identity of the land occupied by defendant with that mentioned in the agreement, accompanied by allegations of false representations inducing its execution, inadequacy of consideration, unreasonableness of its terms, failure to perform conditions precedent, and a plea of the statute of limitations, the court proceeded to try this equitable phase of the litigation, made findings in favor of the defendant and against plaintiff on all the issues, and awarded a decree to defendant for the affirmative relief prayed for, and directing the plaintiff to execute and deliver to defendant a deed to the premises described in its cross-complaint.

From the judgment entered against her, and from an order denying her motion for a new trial, she takes this appeal.

Under the appeal from the judgment plaintiff attacks the sufficiency of the cross-complaint as stating a cause of action, likewise the validity of an order permitting it to be refiled, and insists, also, that certain of the findings are outside the issues, and that the judgment is not supported by the findings.

As the record now stands, however, plaintiff cannot avail herself of these particular objections. The appeal from the judgment in this case was, on July 22, 1902, dismissed by order of this court (*Bell* v. *Southern Pacific R. R. Co.*, 137 Cal. 77), leaving nothing for consideration on this appeal but the validity of the order denying the motion for a new trial, which motion was based upon errors of law and insufficiency of the evidence. As to the alleged error in allowing the cross-complaint to be filed, if any exception was taken to this by the plaintiff, there is no bill of exceptions in the record saving and presenting the point. As to the other objections, they cannot be presented or considered on an appeal from the order denying a new trial. If they existed, they could only be ascertained from the face of the judgment-roll, and could only be availed of by an appeal from the judgment itself. As that appeal was dismissed, there is no record before us to support those objections. (*Thompson* v. *City of Los An-*

*geles,* 125 Cal. 270; *Reclamation Dist.* v. *Thisby,* 131 Cal. 572; *Moore* v. *Douglas,* 132 Cal. 400; *Morse* v. *Wilson,* 138 Cal. 559; *Swift* v. *Occidental etc. Co.,* 141 Cal. 165; and many other cases.)

This brings us to a consideration of the appeal from the order denying plaintiff's motion for a new trial, which was based upon alleged erroneous rulings of the court in the admission and rejection of testimony, and the asserted insufficiency of the evidence to sustain certain findings.

The agreement set forth in the cross-complaint, and which the court decreed should be specifically performed, is conceded to have been made by the plaintiff with the defendant, and, as far as the purposes of this case are concerned, its important recitals are, "That I, Catherine M. Den Bell, . . . in consideration of the benefits to be derived by me in the construction of the Southern Pacific Railroad Company's railroad, and of the sum of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, do hereby grant and agree to and with the Southern Pacific Railroad Company, upon the payment to me or my legal representatives of the sum of one dollar, to sell and convey to said company all that certain piece or parcel of land, situated in the county of Santa Barbara, state of California, and the conveyance shall contain the following conditions: [Here follow a number of recitals that are not material to any point involved in the case], and being a portion of the Dos Pueblos Rancho bounded on the east by lands of Ellwood Cooper, and on the west by lands of The Tecolote Land and Water Company and more particularly described as follows, to wit: Commencing for the same at a point on the center line of the surveyed route of the Southern Pacific Railroad where the line of the same as finally located may or shall intersect the eastern boundary-line of said party of the first part and running thence in a westerly direction along said center line and embracing a strip of land fifty (50) feet wide on each side of said center line, to the western boundary of the land of the party of the first part and the eastern boundary of the lands of The Tecolote Land and Water Company together with all the appurtenances belonging. And the engineers, agents, employees, and contractors of said company are hereby authorized to enter upon said land for the purposes of the survey

and construction of said railroad. In case said railway shall not be located on said land, this agreement shall be null and void."

This agreement was one of many obtained for the defendant in the counties of San Luis Obispo and Santa Barbara, in order to provide a continuous right of way for the completion of its coast line by filling the gap intervening between Santa Margarita in San Luis Obispo County and Ellwood in Santa Barbara County. Construction between these two points had ceased in the early part of 1899, and nothing was done towards its resumption until some two years later, when committees of prominent citizens of San Luis Obispo and Santa Barbara counties, anxious for the completion of the road between these terminal points, solicited and obtained from the principal stockholders of the defendant a written agreement that the road would be completed between these points after such committees had furnished the defendant with the necessary continuous right of way for that purpose.

As far as a particular right of way from the plaintiff is concerned, one H. D. La Motte, the agent of the defendant, theretofore acting for it, in procuring rights of way between these points, had some time prior to the cessation of construction endeavored to obtain a deed therefor from her, but some disagreement arising between them about the consideration for the conveyance, the effort was abandoned.

Nothing further was done with that end in view until the Santa Barbara committee, under its agreement with the stockholders of defendant, took up the matter, and on September 20, 1890, procured from plaintiff the agreement above referred to. This was secured through the efforts of one Dr. Shaw, a friend of the plaintiff, who visited her for that purpose with one of the members of such committee, and it was obtained by him at the solicitation and on behalf of the committee.

The last agreement necessary to insure a continuous right of way between Santa Margarita and Ellwood was secured for the defendant November 28, 1891, and on December 6, 1891, the work of construction between these points was resumed by it.

Claiming to act under this agreement given by the plaintiff a right of way over her land was staked upon the ground

in July, 1895, and in March, 1899, defendant entered upon the premises and constructed its railroad thereover. The construction of the entire road between the main terminal points above designated was completed in December, 1900, and operation thereover was commenced in March, 1901.

Aside from this reference to the general facts in the case, we will, as we proceed, refer to other facts, either admitted, established by the evidence, or disputed, as occasion requires us to bring under review the particular findings which have been challenged.

In her answer to the cross-complaint plaintiff averred that when she executed the agreement above set forth it was represented to her by the defendant that the route of its road had then been permanently and finally located, and surveyed, and staked out about half a mile north of the route on which defendant ultimately constructed its road over her land; that she believed, and that defendant knew she believed, this representation; that she believed that such instrument granted a right of way over said northern route, as was represented to her as having been finally located, and not otherwise, and that it was her intention to grant defendant a right of way for its road over said northern route, and not over the route where defendant had actually constructed its road, and for which it sought to enforce a conveyance from plaintiff; that it was further represented to her at the time of the execution of said agreement, that the defendant's railroad would be immediately extended from "Ellwood," situated about one half a mile easterly from the eastern boundary of her land, and that the construction thereof would continue without cessation until it should reach Templeton in San Luis Obispo County; and that such latter representation, she avers, was one of the inducements and consideration for the execution of the agreement, without which it would never have been made, and that such representation was falsely and fraudulently made and was not complied with.

The court specifically found against her on all these matters, and she attacks the findings in these particulars as not sustained by the evidence.

Addressing ourselves first as to the matter of the representation claimed to have been made to plaintiff concerning the location of the right of way at the time when Dr. Shaw

obtained the agreement from her, and her belief that said agreement referred to said northern route: The only definite evidence we have on this matter is the evidence of the plaintiff herself. She testified that when Dr. Shaw, who purported to represent the citizens' committee, called upon her (Dr. Shaw, we gather from the remarks of counsel for plaintiff, was dead when the case was tried) he stated that he wanted an agreement from her for the same right of way that Mr. La Motte had wanted. This is all that is claimed to have been said upon the subject by Dr. Shaw or any one else, and is the sole representation upon which she claims she executed the agreement, believing that it conveyed a right of way according to a northern survey over her lands, and which she insists was the right of way concerning which she and La Motte had had ineffectual negotiations. There is no evidence to support the other claim in her answer, that it was also represented to her that this northern route had been permanently and finally surveyed, located, and staked out as the route through her lands upon which the railroad was to be constructed.

Now, while it is true that the right of way for which La Motte wanted a deed embraced more particularly the northern route, as claimed by her, still the map which he presented to her when negotiating for a right of way showed two other surveyed lines running through her tract, and the conveyance itself presented for signature, which she either read or La Motte read to her, provided generally as to a right of way, ''That if the party of the second part shall, before the construction of its road, deem it advisable to change the line of its road as now surveyed, where it passes through the land of the party of the first part, that it may do so, and in that event this conveyance shall by the parties heretofore be reformed so as to include land fifty feet in width on each side of the center of said road as constructed.'' In their negotiations there was no objection to this latter clause, or to any of the terms of the conveyance. The disagreement which terminated negotiations concerning it was relative solely to the compensation for its execution. There is no claim that the terms of the conveyance presented for execution by La Motte did not correctly represent the rights which the defendant desired to acquire for a particular or general right of way

over the lands of plaintiff, or that the plaintiff did not know
and understand that those rights were what La Motte de-
sired to obtain from her for the defendant. It will be ob-
served that the location of defendant's road over the northern
survey through plaintiff's land was, by the very terms of
the instrument itself, not intended to be definite, fixed, or
permanent, otherwise than as the defendant might subse-
quently elect to make it so. It was considered merely as the
probable line over which the road would be built, subject,
however, to change at the will of defendant under the clause
in the conveyance expressly providing for such change and
the construction of the road over the plaintiff's land on any
other route the defendant might deem advisable to select,
with the right when such selection was made to have the con-
veyance reformed, so as to grant a right of way over the
route finally selected.

There is no evidence in the case that either in the nego-
tiations through Le Motte, or subsequently through Dr. Shaw,
there was any statement, or declaration made, that the route
of defendant's road had been finally and permanently located
on the northern survey. The conveyance which La Motte
wanted, and which she read, did not so state; in fact, from its
terms it was clear that it was not so considered. In their
terms there was no essential difference as to the right of way
La Motte wanted and the right of way provided for under
the agreement obtained by Dr. Shaw. The former was, in
effect, for a right of way across plaintiff's land on the north-
ern survey, or anywhere else the defendant might deem ad-
visable to construct its road, and the latter provided for a
conveyance or right of way over her lands wherever the route
was finally located by the defendant. Both amounted to
practically the same thing, and negative the idea that any
final location of a route had been determined on or discussed
at any of these interviews. The agreement obtained by Dr.
Shaw, which plaintiff admits she read, and which she does
not pretend she did not understand, expressly referred to the
future and provided for a right of way as to the line upon
which the defendant's road, as finally located, *may* or *shall*
intersect plaintiff's eastern boundary. There is no call for
past surveys or lines which already intersect the boundary,
but only for such as in the future are finally established and

may do so. The court found, upon sufficient evidence, that the line of the surveyed route of the railroad was not finally located over plaintiff's land till the 12th and 13th of July, 1895, and it was then located on a line different from the line of the north survey, and upon the one relative to which the grant of a right of way was specifically decreed in this action. So that, taking into consideration all these matters, there does not seem any basis for the contention of plaintiff that the evidence did not justify the finding that there was no representation made to her when she signed the agreement in question that the line of defendant's road had been finally located on the northern survey, or that she so believed or intended solely to provide for granting a right of way over said route. As we have said, there is no evidence of any representation that the northern route had been surveyed as the final and permanent location of the line. And the court was not bound to accept her statement of her belief that it was so located, or that she intended only to agree to a right of way along it, when there is no substantial evidence to warrant the existence of such a belief, or disclosing such an intention, and when the prior negotiations with La Motte show that no permanent, fixed, or unchangeable line for a right of way was negotiated for by him, and when the agreement in dispute expressly calls for a right of way to be determined by future final location.

As to the finding against the averment in her answer of a representation concerning the immediate resumption of the construction of defendant's road near her land, and its diligent prosecution to completion at Templeton, and the materiality of such representation as an inducement and consideration for the execution of the agreement, which she avers would not have been executed had this representation not been made: As to the representation, she testified that Dr. Shaw said, when interviewing her to obtain the agreement, 'that the railroad had promised to resume work 90 days after they had secured the right of way from the different property-owners, and, as the work was to be commenced at my place, it was important to secure mine among the first.'' This was the only testimony as to the representation itself, or its operation as influencing plaintiff's execution of the agreement, and it is insisted that the court had no right to

disregard this testimony and find to the contrary. But the gist of the matter is not so much whether such representation was made, but whether it was a material inducement and consideration, and operated as such in the execution of the agreement by the plaintiff. An agreement in writing, which is complete and definite in its terms, cannot be successfully attacked and defeated under a claim that a contemporaneous oral representation subsequently unfulfilled, operated as a material inducement and consideration for its execution, unless such claim is sustained by clear, cogent, and convincing evidence, and whether, in any case, the evidence is of such a persuasive character is for the determination of the trial court.

As a matter of fact, the work of construction was resumed within eight days after a complete right of way was obtained from "the different property-owners," but the resumption commenced at Santa Margarita, and not near the line of plaintiff. So, that the burden of her complaint is, that it commenced at one end of the line rather than at the other. While she testified generally on the trial that this representation was one of the material inducements prompting the execution of the agreement, she gave no reason nor made any suggestions in what respect it was material, or what difference it made to her that the work should have been begun at one end of the line rather than at the other; nothing to indicate that she had in view any advantage to be derived by her from the commencement of construction near her property-line, or that any damage resulted from failure to do so; nor was any reason assigned why, if she deemed this representation controlling, she did not have it inserted in the agreement, and it might be suggested also, in the absence of anything to the contrary, that as a long time would necessarily elapse before the road could be completed and operated, that it was to her advantage to have the work commenced at Santa Margarita, as it would leave her land longer in her undisturbed control and use.

However, the court was warranted, from her own testimony previously given, in finding that the representation was neither considered by her important or material, and that it did not operate to secure or influence her execution of the agreement. In giving that testimony she said that

she executed the agreement "in compliment to the gentlemen of the committee and in good will to the citizens at large," and that "the benefits which were to be derived from the construction of the road hardly operated in mind at all in this matter." Certainly, if benefits from the construction of the road itself did not influence her in making the agreement, it cannot be readily perceived how merely commencing the construction at any given point could have been deemed by her of material advantage.

And, as there was at least a substantial conflict in her testimony—the only testimony on the point—upon the matter of the materiality of any benefits which she was to derive from the execution of this agreement, as far as the construction of the road is concerned, the lower court had the right, in connection with the other evidence, or reasonable inferences to be deduced therefrom, or independent thereof, to give credence in the conflict to that portion of her testimony which in its judgment negatived the claim that such representation, if it was made, materially, or at all, influenced her execution of the agreement, and having done so, under familiar principles of law, this court cannot interfere with the conclusion of the lower court in the matter.

The next finding challenged by plaintiff as not supported by the evidence is a finding that defendant employed reasonable speed in constructing its road and completed it within a reasonable time. The objection of plaintiff in this regard is addressed solely to the prosecution of the work between Surf and La Honda, a matter of some five miles, in effecting which two and a half years were expended. Aside from the fact that the agreement between the defendant and the citizens' committees in the respective counties made the former the sole judge of the progress and speed to be employed in construction, the evidence shows that there was never any cessation of work between these points, and that the physical difficulties in constructing this portion of the road were very great and necessarily retarded progress. Beside physical obstacles there was also the financial panic of 1893, prevalent throughout the country, creating a general financial stringency, which affected the progress of all great enterprises, and made it difficult for the defendant to properly realize upon the securities which were issued to provide money for

the construction of this division of the road, the ultimate completion of which involved an expenditure of at least seven million dollars. And it was this unforeseen condition of things which, in the main, was the reason why more rapid progress was not made. This stringency lasted several years, during which the building of the road between these points did not proceed with as much energy as would have been employed had the financial condition of the country been different. After the panic was over and confidence restored, and the projection of large enterprises again found ready financial assistance, the work of construction was energetically pushed to completion by the defendant.

It was not claimed by plaintiff, either by averment or proof, that any more vigorous prosecution of the work would have been of any advantage to her, or that she suffered any damage by failure of earlier completion, but she insists that the financial condition referred to afforded no excuse to more rapid progress by defendant; that the difficulty in obtaining the vast sums necessary was a matter personal to the defendant and should not have had any weight in determining whether reasonable progress was made or not. But it was not such a personal matter. The enterprise of defendant was not alone affected. The financial depression was general and affected all large enterprises. It was a condition which did not prevail when the construction of the road was projected and work actually begun. It was an occurrence which could not readily have been foreseen, contemplated, or provided against, and created a condition which, while temporary, had to be overcome before more rapid progress could be made. Whether the construction of a railroad has been prosecuted with reasonable dispatch is to be determined by the trial court largely from the character and magnitude of the enterprise involved, the difficulties and obstacles to be overcome, and the circumstances surrounding and attending the work.

And in determining that matter we are satisfied that the trial court had the right to take into consideration the general financial depression prevailing, which affected all enterprises and retarded them, in determining whether reasonable progress had been made. It is apparent that an enterprise involving, as this did, the expenditure of seven million dollars between Santa Margarita and Ellwood, and which embraced

within these points the section between Surf and La Honda, could not be prosecuted with the same degree of speed in a time of general financial depression as in a period of general financial prosperity, and a general financial panic which temporarily makes it difficult to obtain the large sums of money which are necessary to rapidly push an enterprise to completion, and which otherwise could be easily provided, and, in fact, were after the panic was over, is as much in the nature of an obstacle to be overcome as the natural obstacles which the topography of the country may interpose.

It is also insisted that the evidence does not support the findings that the agreement was, as to plaintiff, just and reasonable, or that her lands had been benefited by the construction of the road. These matters may be briefly treated of together. There is nothing upon the face of the contract to suggest any unreasonableness. We have recited its essential terms; all the conditions which were to be performed by defendant (some of which we have omitted to specify, as there was no question about them) have been complied with; the road has been constructed and is in operation, and the "benefits to be derived in the construction," etc., which she recited in the agreement as a consideration for its execution by her, have in a large measure been attained.

It appears that the plaintiff, when the agreement was executed, was, and still is, the owner of three tracts aggregating eleven hundred acres of productive land in the immediate neighborhood of the railroad as constructed and operated; that a station has been located near the easterly boundary of one of said tracts, and of easy access from the others; that by means of said road, direct, rapid, and frequent communication and transportation by rail for both passengers and freight are now had with the principal cities in the state,— Los Angeles on the south and San Francisco on the north,— and that the markets for the products of her lands have been improved and enlarged. While the evidence is in conflict as to whether any immediate benefit has occurred to the plaintiff's land by the construction of the road, there is ample evidence that the prospective benefits are large. Counsel for plaintiff insists that such benefits are not to be considered. We do not perceive why not. Prospective advantages are none the less benefits because they are prospective; and the

probability of their attainment always enters largely as an inducing cause into the execution of such agreements as the one we have been considering here. In *Spires* v. *Urbahn,* 124 Cal. 111, this court, speaking with reference to them, says: "These contracts have become familiar as stimulants to the construction of railroads and other public works, the inducement to the promisor, whether expressed or presumed, being the probable enhancement of the value of property by construction. That such contracts or mere offers, unilateral at first, may be enforced when mutuality is secured by an executed consideration, is sustained upon well-recognized principles. The consideration takes its strongest form when it is executed."

Objections in this same line of insufficiency of the evidence to support them are raised against a few other findings, but we do not think they are of sufficient merit or importance to warrant particular reference or discussion.

Plaintiff has also assigned a number of errors of law claimed to have been committed by the lower court in its rulings during the progress of the trial, but as these are not discussed in plaintiff's brief, or any reason advanced therein why any of these rulings were erroneous, we cannot undertake the task of discovering them, and must assume, as no reasons are assigned why these rulings are deemed erroneous, that none exist. "If a party complains of error and seeks reversal, it is due to us that he should show wherein the error consists." (*Brown* v. *Tolles,* 7 Cal. 399; *Taylor* v. *Bell,* 128 Cal. 308.)

The order denying plaintiff's motion for a new trial is affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.