[Crim. No, 1094. Third Appellate District.—November 12, 1929.]

THE PEOPLE, Respondent, v. FLOYD WRIGHT, Appellant.

Blaine McGowan for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the crime of rape committed upon a girl of the age of nearly nine years. He has appealed from the judgment.

The evidence, both direct and indirect, is in substantial and irreconcilable conflict. The testimony of a physician, who examined the girl a few days after the alleged act, is sufficient to show that some person committed the crime. The testimony of the girl, standing alone, is sufficient to show that the defendant committed a forcible rape upon her. It is deemed unnecessary to set out the testimony on account of the character thereof.

Appellant complains of the refusal of the court to give seven instructions requested by him. A careful examination of these proposed instructions and a comparison thereof with instructions given show that, with one exception, all rules of law stated in the proposed instructions

were fully set forth in those given. ■■■ In the excepted case, the instruction requested stated that "verbal admissions are to be viewed with caution." The refusal to so instruct the jury was not error. (*Hirshfeld* v. *Dana,* 193 Cal. 142, 160 [223 Pac. 451].)

Mrs. James, the defendant's mother-in-law, who is the mother of the prosecutrix, was a witness for the prosecution. She was cross-examined by counsel for the defendant as follows:

"Q. You and your son-in-law don't get along very well together, do you, Mrs. James? A. No sir. Q. Did you ever say that you hated him? A. Yes sir. Q. Did you ever say that you would fix him? A. No. Q. Didn't you ever say, 'I will fix you?' A. No sir. Q. Did you ever say anything like that? A. No sir. Q. Now think. A. Well, I will tell you why I never care for my son-in-law ever since he beat me up. Q. He beat you up? A. Yes sir. Q. That was the time that you spit at him? A. Yes. Q. And that was the time that you said he was no man? A. Yes sir. Q. That was the time you had him arrested wasn't it? A. Yes sir."

The defendant's wife was a witness for him. On direct examination she testified as follows:

"Q. Have you ever heard your mother say to him (defendant), 'I hate you'? A. Yes. Q. How many times has she said that? A. She has said that most every time I go and visit her. They always get into a quarrel and things like that. . . . Q. Did she ever say to him, 'I will fix you'? A. Yes, she said that once after this other trouble. Q. She said that when? A. She said that after this other trouble.

On cross-examination she testified as follows relating to the same matters:

"Q. And you say that at one time she said to him, 'I hate you'? A. Yes. Q. And 'I will fix you'? A. Yes. Q. Now you testified that that occurred about the time of the other trouble. Now what other trouble do you mean, Mrs. Wright? A. Well, that is the time they said he knocked her out of the house. . . . Q. Well, didn't he throw her out of the house? A. Not that I saw. I was in bed at the time. Q. You don't know that he plead guilty to that in the justice's court, do you, Mrs. Wright? Mr. McGowan: I object to that as improper cross-examination. . . . The

Court: Objection overruled: go ahead. A. No, I did not know he did it. Q. Do you know that he served a term in the county jail for it? Mr. McGowan: I object to that as incompetent, irrelevant and immaterial and assign the question on the part of the district attorney as misconduct. . . . The Court: . . . The objection is overruled. A. Yes, I do.''

■ It is conceded that the court erred in overruling the objections mentioned. The question then is whether such rulings were prejudicial. Counsel for the defendant, in the cross-examination of Mrs. James, developed the fact that the defendant had beaten her up, and in the cross-examination of the defendant's wife it was shown, without objection, that he had ''knocked her (Mrs. James) out of the house.'' After the defendant had thus proved the commission of the offense, it is highly improbable that his rights were prejudiced by the further proof that he was imprisoned as punishment therefor. It is the fact that he beat up a woman which probably weighed against him with the jury rather than his imprisonment. Having proved that fact himself, he is not in a position to complain of its effect on the jury.

■ The offense was committed February 24, 1929. The prosecution introduced in evidence bloodstained bloomers which the prosecutrix testified she was wearing at the time of the offense. The defendant attempted to prove that on or about the 15th of the following April blood was observed on bloomers she was wearing at that time and that she then ''disappeared in the house and returned shortly thereafter with bloomers on free from 'blood.'' The court sustained objections to such proof. The evidence offered would have had no tendency to prove or disprove any issue in the case.

There is ample evidence in the record to support a verdict for either party. Under such circumstances the determination of where the truth lies is exclusively within the province of the jury and the trial court. The erroneous ruling of the trial court is not deemed a sufficient ground for reversal.

The judgment is affirmed.

Jamison, J., *pro tem.*, and Thompson (R. L.), J., concurred.