[Civ. No. 23798. Second Dist., Div. One. Aug. 12, 1959.]

HENRY S. GREENSTONE, Plaintiff and Appellant, v. CLARETIAN THEOLOGICAL SEMINARY (a Corporation), Defendant and Appellant.

22

24

Kopald & Mark for Plaintiff and Appellant.

Marcus L. Roberts for Defendant and Appellant.

LILLIE, J.—On September 20, 1955, plaintiff sued appellant Claretian Theological Seminary and defendant Jacoba Buchenau. The first cause of action for specific performance of a written contract dated August 30, 1955, between plaintiff and the seminary for the sale of an apartment house was directed against the seminary, the second, for damages for interference with contractual relationship against Buchenau, and the third for declaratory relief against both defendants. The seminary in its answer denied it ''breached'' the contract and ''failed or refused to proceed with the sale''; alleged that defendant Buchenau, by asserting title to the property made completion of the sale impossible; reaffirmed the contract; and agreed to complete the same ''in the event (the) court so orders.'' Mrs. Buchenau in a cross-complaint against both parties asked the court to quiet title to the property. This issue was tried first; the trial court found her claims to be without foundation and ordered title quieted against her. Plaintiff dismissed his second and third cause of action against defendant Buchenau and proceeded to trial on the first and third against the seminary, which then unsuccessfully moved to file a supplemental answer.

Without receiving any evidence at the trial, except the written contract, the lower court by interlocutory judgment ordered the parties to specifically perform the terms of the agreement in accord with certain instructions; provided that if plaintiff failed to comply judgment be entered against him and upon failure of the seminary, plaintiff be permitted to amend his complaint to allege breach of contract and damages; ordered the court upon completion of the sale to take an accounting to determine the net rentals received by the seminary from September 20, 1955, and enter judgment accordingly; and expressly retained jurisdiction to do everything necessary to a final and complete disposition of the obligations and rights

of the parties under their agreement. A controversy arose under the terms of the interlocutory judgment and the seminary unsuccessfully moved for a final judgment in its favor. Thereafter it appealed from the interlocutory judgment (No. 22720) and the order denying the motion for final judgment (No. 22721), both of which appeals were dismissed; and filed a petition for certiorari (No. 27863) which was denied.

Defendant Buchenau appealed from the judgment quieting title against her which was affirmed and is now final. A second time the seminary moved for final judgment, the lower court denying the motion; and then unsuccessfully moved for leave to file a supplemental answer setting forth ''plaintiff's default'' under the agreement. Thereafter, the trial court granted plaintiff's motion for a final judgment which was entered October 24, 1958; took evidence on the matter of accounting and ordered the parties to specifically perform the contract, crediting $34,011.20 net rentals to plaintiff against the purchase price and allowing the seminary thereon $13,586.95 interest at 7 per cent on the $65,000 cash price from September 20, 1955. Both parties appeal therefrom, the seminary from the entire judgment; the plaintiff from that portion crediting the seminary with interest on the unpaid cash purchase price.

Absent evidence received at the trial, we resort to the pleadings for a recitation of uncontroverted facts. The basis of this cause had its genesis in a written agreement dated August 30, 1955, signed by plaintiff and the seminary, acknowledging receipt of a $5,000 deposit from plaintiff to apply on the purchase price of real property ''to be deposited in escrow'' at the Hollywood State Bank; and reciting that the seminary agreed to sell to plaintiff a 30-unit apartment house for $65,000 cash and plaintiff's assumption of a first trust deed in an amount not to exceed $72,000. Immediately prior to the execution of this agreement, plaintiff delivered the $5,000 deposit to a real estate broker, agent of the seminary, who thereupon deposited it with the escrow department of the bank for the purpose of an escrow, where it is still held. Two days after execution of the agreement defendant Buchenau notified the parties and the bank that she was the owner and the seminary had no title thereto. Thereafter, the seminary advised plaintiff it would not proceed with the sale ''unless and until the claim of title to the property asserted by the defendant Buchenau is withdrawn'' and did not consummate the sale. Plaintiff was nowise in default under the agreement and ready, willing and able to complete the purchase. The within action resulted.

Appellant seminary assigns numerous errors for reversal but its main contention appears to be that the trial court erred in allowing to plaintiff the net rental income on the property. What we deem to be its first objection—that the pleadings framed an issue of breach of contract on which no evidence was taken, but on which the trial court made a finding and entered judgment adjudging it to have breached the contract and awarding damages, is without merit. ■ An analysis of the pleadings discloses that no issue of breach was raised, nor would such an issue be material to this cause predicated entirely upon a request for specific performance in which no damages were alleged or sought. Although the answer denied breach of the agreement and refusal to proceed with the sale, it cannot be contradicted even by the seminary that the pleadings reflect that, whatever it might call its noncompliance with the agreement sued upon, it did not proceed with the sale although plaintiff, not in default, was ready, willing and able to perform; would not comply until claim of title was withdrawn by Mrs. Buchenau, so advising plaintiff prior to suit; and continued to acknowledge the existence of a valid contract by reaffirming it and agreeing to perform. ■■ Even though the seminary seeks to excuse the same, this lack of compliance, an admitted fact upon which it was unnecessary and improper to offer evidence (*Lifton* v. *Harshman*, 80 Cal. App.2d 422 [182 P.2d 222]), is a sufficient basis upon which to predicate an action for specific performance of a valid existing contract. Whether such noncompliance *under the circumstances at bar* constitutes a "breach," or the trial court so found, is immaterial to the main issue of specific performance for neither cause is grounded on breach of contract. The cloud on the title to the property having theretofore been removed by the lower court, making transfer thereof possible, and both plaintiff and the seminary having affirmed the contract agreeing to perform, thereby treating it as unbroken and still in effect subject to being specifically performed, not even an issue concerning the reason for the seminary's noncompliance remained material to the cause. The way was clear for specific performance, which the court ordered. ■ The seminary also argues that the interlocutory judgment adjudged that it "breached" the agreement. It is clear from a just reading of the judgment that this is untrue, for the reference therein to "recovering damages for breach of contract" (paragraph 5) relates solely to the alternate remedy open to plaintiff if the seminary refuses to perform in the manner set forth in the

judgment, which even before it could be utilized required an amendment of plaintiff's complaint to allege breach and pray for damages. The "breach" mentioned in the judgment referred only to the seminary's future failure to comply with its terms, and not to its original noncompliance sued upon.

Through its query—whether *Lifton* v. *Harshman*, 80 Cal. App.2d 422 [182 P.2d 222], supports the judgments—appellant contends the trial court erred in awarding plaintiff $34,-011.20 damages on a complaint which neither alleged nor prayed for them.

Manifest in its repeated references to "damages" is appellant's basic misconception of what this credit actually consists. ▮ It is true, as plaintiff argues, that where a vendee is entitled to a decree of specific performance of a contract for the purchase or exchange of land, he is entitled to a judgment for the rents and profits thereon from the time conveyance should have been made (*Lifton* v. *Harshman*, 80 Cal.App.2d 422 [182 P.2d 222]; 90 Cal.App.2d 180 [202 P.2d 858]; *Heinlen* v. *Martin*, 53 Cal. 321; *Coleman* v. *Dawson*, 110 Cal.App. 201 [294 P. 13]; 45 Cal.Jur.2d, § 83, p. 374; 7 A.L.R.2d 1204); and that under this rule no "damages" as such are awarded, the amount in reality being a form of compensation due the buyer for loss incurred because of the delay in receiving title, which amount may be ordered incident to the judgment of specific performance. ▮ This is awarded upon the theory that a court of equity, once it obtains jurisdiction of an action for specific performance, should adjust the rights of the parties and equalize any losses occasioned by the delay by offsetting them with money payments. Confusion in this area has existed because of the informal use of the term "damages" in connection with such an award, but it is settled that such compensation neither constitutes damages as contemplated in an action for breach of contract, nor implies legal damages (7 A.L.R.2d 1204; "Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land").

No one claims that plaintiff alleged or sought damages, and it is conceded that in the body of the pleading there exists no allegation charging the seminary with liability for loss due to delay in transferring title, no mention of rentals or profits, and no request or prayer seeking an award thereof. Actually, plaintiff charged Mrs. Buchenau with liability for loss of rental income from the property in the sum of $5,000. Respondent argues that the trial court, without the existence of any pleading, had inherent power as a matter of course inci-

dent to the judgment to make the award, citing 7 A.L.R.2d 1204, and *Lifton* v. *Harshman*, 80 Cal.App.2d 422 [182 P.2d 222]. Appellant on the other hand says that under the pleadings herein no issue of "damages" was raised, divesting the lower court of power to make the award.

If we are to classify the $34,011.20 credit allowed plaintiff on the purchase price in the final judgment appealed from as compensation for loss occasioned by the delay in performance, or for withholding title, a serious problem arises out of plaintiff's failure to allege and pray for such loss in his complaint. *Chase* v. *Blair*, 105 Cal.App. 744 [288 P. 681], holds that such pleading is necessary to an award. Even the complaint in *Lifton* v. *Harshman*, 80 Cal.App.2d 422 [182 P.2d 222], heavily relied upon by respondent, alleged that the plaintiff had been deprived of rents, issues and profits by reason of defendant's failure to convey the property (p. 436), and serves as no authority for respondent's contention. The court in the second appeal in the Lifton case, 90 Cal.App.2d 180 [202 P.2d 858], holding that "the legal measure of damages which a vendee suffers by reason of the delay in performance by the vendor is the reasonable rental value of the property" cited *Heinlen* v. *Martin*, 53 Cal. 321, 344; *Abbott* v. *76 Land & Water Co.*, 161 Cal. 42, 47 [118 P. 425]; *Coleman* v. *Dawson*, 110 Cal.App. 201, 213 [294 P. 13]; *Smith* v. *Schrader*, 80 Cal. App. 478, 489 [251 P. 967]; *Jonas* v. *Leland*, 77 Cal.App.2d 770, 778 [176 P.2d 764]; *Chase* v. *Blair*, 105 Cal.App. 744, 746 [288 P. 681]; *Fisher* v. *Losey*, 78 Cal.App.2d 121 [177 P.2d 334]; but none of these cases aid respondent's argument that rental loss need not be alleged and the court can make an award thereof as a matter of course. In most of them the loss based on rental value was alleged and prayed for in the complaint (*Heinlen* v. *Martin*, 53 Cal. 321; *Abbott* v. *76 Land & Water Co.*, 161 Cal. 42 [118 P. 425]; *Coleman* v. *Dawson*, 110 Cal.App. 201 [294 P. 13]; *Smith* v. *Schrader*, 80 Cal.App. 478 [251 P. 967]); in others it could not be determined if the pleading so alleged, but from the context of the opinion it is obvious there was a proper allegation (*Jonas* v. *Leland*, 77 Cal. App.2d 770 [176 P.2d 764]; *Fisher* v. *Lozey*, 78 Cal.App.2d 121 [177 P.2d 334]); and in one, *Chase* v. *Blair*, 101 Cal.App. 744 [288 P. 681], no allegation of loss appeared in the body of the complaint and the court held the prayer therefor insufficient upon which to base an award.

However, in consideration of the explicit terms of the agreement of August 30, 1955, the manner in which they were

ordered enforced in the final judgment, and the obvious intent of the trial court, we cannot denominate the credit allowed plaintiff in the instant case compensation for loss based upon rents and profits suffered by reason of the seminary's delay in transferring title or as an outright award thereof, separate and apart from the express provisions and enforcement of the agreement, defined in the cases hereinbefore discussed to which the above rules of pleading apply. The amount constitutes neither "damages," "judgment for loss of rentals," nor an "award for compensation for loss due to delay in conveying title," but a credit due the vendee under the specific terms of the agreement resulting from the trial court's order that the terms of the agreement be carried out, and its determination of the cash purchase price due upon an adjustment of the rights of the parties thereunder. The trial court in its final judgment simply decreed that the agreement be enforced according to its terms, and the accounting provided the facility or method by which the purchase price could be determined at that time after a lapse of several years. It constitutes part of the final all-over settlement of the terms of the contract, one of which provides that "(I)nterest, taxes, rents and fire insurance are to be prorated to date, deed is recorded." An accounting was rendered and the trial court ordered the parties to execute escrow instructions "to carry said contract into effect, in accordance with its terms." No judgment for net rental value was awarded, but on the contrary it was decreed "that plaintiff is entitled to a credit against the purchase price of the real property described in said agreement for net rents received from said real property by the defendant seminary from September 20, 1955, to September 15, 1958, in the sum of $34,011.20. Interest, taxes, rents, fire insurance and payments, if any, the defendant seminary made on the principal of the Winter Mortgage Company note and expenses of operating the apartment house to be prorated from September 15, 1958, *to the date the deed from the seminary to plaintiff is recorded."* (Emphasis added); that the seminary is entitled to receive the sum of $13,586.95 for interest on the unpaid purchase price; and decreed the unpaid cash purchase price payable by plaintiff under the contract as of September 15, 1958, to be $44,575.75. ▮ Authority for the ascertainment and settlement of such amounts arising out of the express terms of the agreement, as an aid to the parties in the faithful performance thereof and to the court in determining the pur-

chase price due thereunder in a judgment for specific enforcement, is found in the policy of a court of equity, once having acquired jurisdiction of an action for specific performance, to adjust the rights of all under the contract and leave nothing open for further litigation. ■ Therefore, where plaintiff seeks specific performance, affirming the contract, the defendant reaffirms and agrees to perform the same, a court of equity can not only order the parties to perform every term of the contract they affirm, but if necessary ascertain therefrom by accounting or otherwise the total purchase price to be paid thereunder upon conveyance of title. ■ Aside from the general equity jurisdiction of the court in cases of this kind, the prayer for specific performance, the general prayer for ''such other and further relief as the court deems just,'' and the express reservation of the court's jurisdiction in the interlocutory decree to do everything necessary to a final and complete disposition of the obligations and the rights of the parties under their agreement, no other pleading appears necessary to implement enforcement or facilitate the performance of all of the terms of the contract. ■ ''The situation is simply that, if the court orders it (contract) to be performed, the decree must as nearly as possible order it to be performed according to its terms . . .'' (7 A.L.R.2d, p. 1206). This obviously was the intent of the trial judge: ''All the court did was to order this contract to be performed . . . and this contract says interest, taxes, rents and fire insurance are to be prorated.''

■ Concerning the seminary's next contention that the complaint fails to state facts sufficient to constitute a cause of action for specific performance, we refer to the well-established rule that the averments of the pleadings are to be liberally construed to support a judgment based upon any sound theory of the facts alleged (*Marsteller* v. *Leavitt,* 130 Cal. 149 [62 P. 384]; *Estergren* v. *Sager,* 39 Cal.App.2d 401 [103 P.2d 177]), and if the necessary facts appear even only by implication or as a conclusion of law, the pleading will be upheld (*Tietke* v. *Forrest,* 64 Cal.App. 364 [221 P. 681]).

■ Appellant urges that the contract (which it explicitly reaffirmed and agreed to perform) is incomplete respecting time of performance, and uncertain. This is without merit for if a contract does not specify a time for performance a reasonable time is implied by law (*Pierce* v. *Avakian,* 167 Cal. 330 [139 P. 799]; Civ. Code, § 1657). Likewise untenable is appellant's argument that the pleading must

show plaintiff's tender before he can require it to perform. Lack of tender, it urges, precludes any default on its part without which no cause of action can arise; and it argues that where the contract does not fix the time of performance, an offer to perform may be made at any time before the debtor upon reasonable demand has refused to perform. Plaintiff pleaded that the seminary advised him it would not proceed with the sale until Mrs. Buchenau's claims were withdrawn, and further alleged that he was not in default and has at all times been ready, willing and able to complete the purchase.

Appellant relies on section 3392, Civil Code, but all this section provides is that there can be no specific performance unless the party seeking the same has performed the condition precedent. This is fundamental, but it is also basic that generally a vendee is not bound to make payment until the vendor can give a good deed to the premises (*Cates* v. *McNeil*, 169 Cal. 697 [147 P. 944] ; *Ohanian* v. *Kazarian*, 123 Cal.App. 196 [11 P.2d 42] ; *Lifton* v. *Harshman*, 80 Cal.App. 2d 422 [182 P.2d 222] ). The complaint on its face shows (and it so admitted in its answer) that the seminary notified plaintiff it would not proceed with the sale until Mrs. Buchenau's claim of title was withdrawn, and therefore would not deliver a good deed. A formal tender or demand under these circumstances would have been useless and unavailing, and equity does not impose on the vendee the observance of a fruitless or idle ceremony (*Gray* v. *Dougherty*, 25 Cal. 266; 45 Cal.Jur.2d, § 43, p. 320). The commencement of the action itself constituted a sufficient demand upon appellant to perform (*Heinlen* v. *Martin*, 53 Cal. 321).

Furthermore, according to the terms of the agreement, a copy of which was made a part of the complaint, the tender of $60,000 balance did not become a condition precedent until plaintiff was called upon by the escrow to deposit the same.

Whether the seminary was actually in "default" when suit was instituted is not the point on a pleading issue, for the complaint alleged not only a "breach" and its failure and refusal to perform, which was denied by the seminary, but its noncompliance with the contract. Appellant several times has alluded to its failure to proceed with the sale as due to its refusal to agree to certain terms of the proposed escrow instructions; and to the fact plaintiff made no offer to perform, no tender of purchase money and demanded no deed. These references come from a source completely outside the record, for nowhere in the pleadings properly before us do

any such facts appear. As to appellant's argument that the complaint must show it was possible for the seminary to perform, and it shows on its face its inability to comply, we find nowhere in the pleading any allegation or mention of impossibility of performance, but on the contrary, a refusal to perform because of Mrs. Buchenau's claims, which it alleged are unfounded, and a prayer asking for a declaration to that effect, and an affirmation of an existing contract which plaintiff seeks to have the seminary perform.

Appellant complains that the trial court made no findings of the interlocutory judgment concerning rentals, but that it nevertheless awarded plaintiff the gross income less expenses. Since no claim was made in the complaint against the seminary for rental value prior to the commencement of the action, as alleged in the cause against defendant Buchenau, and since plaintiff would not in any event be entitled to such allowance before this time, since the commencement of the action constituted the demand, the trial court could not very well have made a finding of fact concerning the same. The most it could do, under the circumstances, to implement the enforcement of the contract was to order an accounting in the future, which it did. This accounting, as it should be, was made at the time of final judgment after evidence had been taken in the matter, and at a time when the amount due under the agreement had to be determined.

Attack on the findings of the final judgment is made in connection with the computations made by the trial court, in that they are unsupported by the evidence. Appellant argues that certain deductions should not have been disallowed; and to sustain the final judgment reflecting the computations means reducing the original purchase price by $40,724.84. A fair analysis of the figures used by the lower court discloses no alteration of the terms of the agreement, no reduction of the original purchase price admitted in the answer to be fair and reasonable, and a faithful enforcement of the contract. Appellant's real objection is predicated on its persistent, but not well founded argument that "damages" should not have been awarded. The "reduction" in the purchase price claimed by appellant is nothing more than a credit properly allowed by the court under the specific terms of the agreement in determining the cash due under the purchase price. Whether the method of ascertaining the credit allowed followed the terms of the agreement and the specific items subject to proration enumerated therein, was largely a matter for

the trial court based upon the accounting stipulated to by both parties; and upon the limited record before us, we find sufficient evidence to support the amount credited to plaintiff under the contract.

Appellant's last three contentions entitled "Judge Chantry's Decision" "Denial of Seminary's Motion for Final Judgment by Judge Praeger," and "Court Abused its Discretion in Denying Seminary's Motion to File Supplemental Answer," we dispose of somewhat summarily for the reason that appellant has failed to specifically point out wherein the trial court was in error in denying the motions.

Appellant moved for a final judgment in its favor, alleging in its affidavit plaintiff failed to comply with the interlocutory judgment; the motion was denied May 22, 1957. Appellant has advised us that it "is at a loss to know why the court refused to grant its motion" and announced "we now elicit from plaintiff a reason why the decision from Judge Chantry should not be reversed." This in substance constitutes its argument to this court. We are aware of no rule on appeal that shifts the burden of proving error from appellant to the respondent; nor can we be expected to prosecute an independent inquiry to find reasons for or against the rulings of the trial court (*Bradley* v. *Butchart*, 217 Cal. 731 [20 P.2d 693]; *Bell* v. *Southern Pacific R.R. Co.*, 144 Cal. 560 [77 P. 1124]). It is the duty of counsel by argument and citation of authority to show in what manner rulings complained of are erroneous. We are not obliged to perform the duty resting on counsel (*Stohr* v. *Stohr*, 148 Cal. 180 [82 P. 777]; *Randall Estate*, 194 Cal. 725 [230 P. 445]; *Martter* v. *Byers*, 75 Cal.App.2d 375 [171 P.2d 101]; *Richard* v. *Richard*, 123 Cal.App.2d 900 [267 P.2d 867]).

The record discloses that the second time appellant moved for a final judgment it was also unsuccessful. Besides having to interpret the provisions of the interlocutory judgment, it was necessary for the lower court to determine as a matter of fact whether the seminary complied with those provisions and the plaintiff defaulted as charged. Again appellant has failed to specifically point out wherein the trial court was in error in denying the motion.

 It is within the discretion of the trial court to deny a motion to file a supplemental answer, and the reviewing court will not reverse its order unless an abuse thereof is manifest in the record. We are in accord with respondent's position that no sufficient showing was made to justify the

lower court in permitting the pleading to be filed. By the supplemental answer the seminary sought to show that plaintiff and not it had defaulted under the contract, by reason whereof plaintiff lost his right to specific performance and forfeited the $5,000 deposit. Appellant claims that the only tender made in the case was the one it made after the quiet title judgment against Mrs. Buchenau had become final (May, 1958) which plaintiff refused to accept; thus the court should have granted the seminary's motion to file its supplemental answer. By the very nature of the proposed supplemental pleading and the state of the case when it was offered, there was presented to the trial court a mixed question of law and fact. As to the factual issue, the trial court in denying the request resolved it against appellant, which determination this court will not disturb. Prior to institution of the action, the seminary establishing its refusal to proceed with the sale by advising plaintiff it would not comply with the agreement rendering any tender of money or demand of a deed by plaintiff useless, makes ineffective appellant's argument that neither party could be in default under the contract until its tender was made and refused, and points up the fact that any subsequent tender of a deed could only be under the terms of the interlocutory judgment decreeing the manner in which the original contract was to be carried out. We note in appellant's argument that its first motion for final judgment should have been granted, its claim that on October 6, 1956, it made a tender of a deed which complied with the interlocutory judgment, which leaves a question in our minds concerning its present representation that the "tender" in May, 1958, was the "only tender made in this case" by the seminary.

On the cross-appeal of plaintiff the sole issue is whether, where specific performance is decreed, the defaulting seller is entitled to interest on any part of the agreed cash purchase price. The cash price was $65,000, $5,000 of which plaintiff paid to the seminary which was deposited by it in the escrow department of the bank, leaving $60,000 due. The final judgment allowed interest at 7 per cent per annum to the seminary on the entire $65,000, from September 20, 1955, to the date plaintiff would deposit the same in escrow. No mention of such allowance was made in the interlocutory judgment, two years before, nor did the seminary seek the same.

Generally, loss of use of purchase money during a delay in conveying title based upon interest may be awarded a vendor in a decree of specific performance. This, like an

award of rents and profits, is based on the theory of equalizing any losses occasioned by the delay. Again, in the instant case, however, this constitutes no award or judgment but a credit allowance to the seller in an adjustment made incident to an order enforcing the terms of the contract. ██ Where specific performance is decreed it is the duty of the court to do more than require the defendant to perform under its terms; it should safeguard his rights thereunder as well as the plaintiff's, and in addition to ordering him to execute and deliver the deed, it should make delivery conditional on the payment by the plaintiff of the amount due on the purchase price as well as any other amounts due under the terms of the contract (45 Cal.Jur.2d, § 89, p. 383; *Gray* v. *Dougherty*, 25 Cal. 266; *Brandt* v. *Clark*, 81 Cal. 634 [22 P. 863]; *Bird* v. *Potter*, 146 Cal. 286 [79 P. 970]; 7 A.L.R. 1204) on the theory that the court will do complete justice by adjusting the rights of all parties under the contract.

██ The fact that the vendor may or may not be in default under the contract seems of little importance in view of its specific terms, and since the interest allowance does not exceed plaintiff's credit on net rentals. We also hold that the entire $65,000 not having been available for the seminary's use, even though $5,000 thereof was held by the bank, that the interest should be computed on the entire cash price.

For the foregoing reasons the judgment is affirmed, each party to bear his own costs.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 28, 1959.